Argued May 21, affirmed in part; vacated in part; remanded,
June 18, petition for rehearing denied July 11, petition
for review denied September 18, 1973

STATE OF OREGON, *Respondent, v.* DANNUE
LOUIS MAYO (No. C-72-08-2393), *Appellant.*

511 P2d 456

*Robert C. Cannon,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*John H. Clough,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

FOLEY, J.

Defendant was indicted for: Count I, the crime of assault in the second degree (on Officer Potter) (ORS 163.175); Count II, riot (ORS 166.015); and Count III, assault in the third degree (on Officer Guinn) (ORS 163.165). After entering a plea of not guilty, defendant was found guilty of all three counts by a jury and he appeals from a judgment of conviction.

The facts giving rise to the charges against defendant were essentially as follows:

On July 30, 1972, Officer Potter of the Portland Police Department received a radio call and went to Columbia Park in north Portland. Upon his arrival

at Columbia Park he contacted a concessionaire and was informed by her that money had been stolen from her cashbox. After the concessionaire pointed out the suspect to Officer Potter, Officer Potter walked over to the suspect and told the suspect that he was under arrest. After a short discussion, the suspect submitted peacefully to the arrest and started to walk to the patrol car with Officer Potter.

Around the bandstand in the park there was a large, diffuse group of people listening to music. There was also a large party of families, that appeared to be a church group, further to the north at the picnic tables in the park. As Officer Potter attempted to complete his arrest, a crowd gathered around the officer and the suspect and members of the crowd started pulling at the suspect and tried to pull him away from the officer. There was a substantial amount of pushing and shoving by the crowd and an individual who was wearing a red jumpsuit, Michael Vance, reached over the top of another individual and hit Officer Potter in the face, shattering his glasses and driving the eyepiece into his nose.

At the same time another officer, Officer Guinn, observed defendant come from behind Officer Potter, jump upon his back, and hit him in the head with his fist. Officer Guinn immediately grabbed the defendant around the neck and pulled him away from Officer Potter and at this time defendant hit Officer Guinn in the jaw with his fist.

Officer Potter jumped to his feet and started to chase the individual who had assaulted him, at which time he remembers being hit on the back of the head by an unknown assailant, and he went down for the second time. Then, "the lights just went out." Other officers who observed this second assault stated that

defendant participated in it by kicking Officer Potter in the chest area, as did Vance, who struck Officer Potter across the back with a garbage can.

After this second assault, both defendant and Vance ran off. The main interest of the police officers from this point on appears to have been to apprehend Michael Vance. The main interest of the crowd (estimated in the hundreds) appears to have been to thwart the police in their efforts to do so. During the chase defendant was observed periodically to be running alongside Vance and at one point, when the officers were attempting to arrest Vance, defendant was quoted as saying, "You aren't taking this dude anywhere, motherfucker."

Defendant's first assignment of error is that the trial court should have granted his motion for judgment of acquittal as to the charge of assault in the second degree (the assault upon Officer Potter).

ORS 163.175 provides in pertinent part as follows:

"(1) A person commits the crime of assault in the second degree if he:

"(a) Intentionally or knowingly causes serious physical injury to another; or

"* * * * * *."

"Serious physical injury" is further defined in ORS 161.015 (7) as "physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."

■ Looking at the evidence in the light most favorable to the state, *State v. Redeman,* 9 Or App 329, 496 P2d 230 (1972), the record shows that

defendant struck Officer Potter on the back of the head with his fist and later kicked him in the chest area while Potter was on the ground. This is sufficient to show defendant's intent. But was the injury which defendant caused "serious physical injury?" When Officer Potter was brought into the hospital his only injuries were lacerations over the bridge of his nose and over his right eyebrow. No skull fracture was found and Officer Potter was required to stay only overnight in the hospital.

■ Referring to the statutory definition of "serious physical injury," the state introduced no evidence that Officer Potter's facial injuries caused "serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ," nor did it attempt to show that the kick to his chest area resulted in any injuries whatsoever. The state appears to have relied solely on proving that the injuries inflicted created "a substantial risk of death." To do so, the state qualified Officer Potter's treating physician as an expert witness, but the physician specifically stated that he could not say that the totality of the injuries inflicted on Officer Potter created a "substantial risk of death," but only that they created "a possibility of risk of death." There was thus no evidence that Officer Potter sustained "serious physical injury," and thus the conviction of assault in the second degree cannot be sustained.

However, it is clear that the jury found that Officer Potter did sustain "physical injury" within the meaning of ORS 163.165, assault in the third degree,[1]

---

[1] "Physical injury" is defined in ORS 161.015 (6) to mean "impairment of physical condition or substantial pain."

and it is also clear that the jury found that defendant caused this injury with the mental state ("intentionally, knowingly or recklessly") required by that statute. We have thus a finding of guilty by the jury of the lesser included offense of assault in the third degree. In such a situation where the "* * * court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered * * *." Oregon Constitution, Art VII, § 3. We therefore remand the case for entry of a judgment of guilty of assault in the third degree instead of assault in the second degree and for resentencing on that basis. *See also State v. Zadina,* 1 Or App 11, 457 P2d 670 (1969).

The second assignment of error is that the court erred in denying defendant's demurrer to the count of the indictment which charged assault in the third degree. Defendant's theory was that the state, by electing to indict him rather than charge him by criminal complaint for that Class A misdemeanor, was determining unilaterally that defendant should have his fate determined by a jury which could render its verdict by a less than unanimous vote. Had defendant been charged by criminal complaint, the argument goes, he would have been entitled to a unanimous jury verdict, ORS 136.610 (2), but since he was indicted and held for trial in the circuit court, he could be convicted by a 10-2 verdict. *Apodaca v. Oregon,* 406 US 404, 92 S Ct 1628, 32 L Ed 2d 184 (1972).

■ Defendant contends that a system which reposes such discretion in the prosecuting attorney violates his right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution. We disagree. *Apodaca v. Oregon,* supra, estab-

lished that criminal defendants have no constitutional right to a unanimous jury verdict. Defendant's right to unanimity in the district court is granted pursuant to statute. In order to conclude that the statutory scheme is constitutionally invalid, we would have to find that there is no rational basis for the distinction and that a unanimous verdict of six jurors provides significantly greater protection to a defendant than a 10-2 verdict. These propositions were raised and rejected in *Johnson v. Louisiana,* 406 US 356, 92 S Ct 1620, 32 L Ed 2d 152 (1972).

■ The third assignment of error, that the court should have directed a verdict for defendant on the charge of riot because of insufficient evidence, is without merit. The record is filled with evidence that the statutory criteria for the crime of riot were met, viz., that defendant engaged "in tumultuous and violent conduct * * * with five or more other persons," and that he "thereby intentionally or recklessly" created "a grave risk of causing public alarm." ORS 166.015.

Defendant's fourth and fifth assignments of error do not merit discussion.

Affirmed as to Counts II and III. Prior judgment and sentence on Count I vacated. Remanded for entry of judgment of conviction on Count I of assault in the third degree and resentencing on that count.