**The STATE of Utah in the Interest of William N. BESENDORFER, Jr., (02–07–57), a person under eighteen years of age.**

No. 14595.

Supreme Court of Utah.

Aug. 9, 1977.

Gordon F. Esplin, Salt Lake City, for appellant.

Vernon B. Romney, Atty. Gen., William W. Barrett, Asst. Atty. Gen., Salt Lake City, for respondent.

MAUGHAN, Justice:

Defendant appeals from an order of the Juvenile Court, wherein he was found to be within the court's jurisdiction as provided in Sec. 55–10–77(1), enacted 1965, on the ground defendant had violated Sec. 76–5–103(1)(a), as enacted 1973, amended 1974. We reverse in part, and remand for further proceedings. All statutory references are to U.C.A.1953.

Petition was filed alleging that defendant, on or about January 14, 1975, in violation of Sec. 76–5–103(1)(a), assaulted and intentionally caused serious bodily injury to W. Kory Jackson.

A hearing was held March 15, 16, 1976. At its conclusion, the court ruled the state had proved the allegations of the petition to be true, beyond a reasonable doubt. The court found defendant had assaulted and intentionally caused serious bodily injury to W. Kory Jackson; and as a result of the assault, Kory Jackson sustained injuries to his teeth in the amount of $546.00. It ordered defendant assessed $546.00, in restitution, for Kory Jackson.

On appeal, defendant seeks to have this court set aside the foregoing findings and order. Specifically, defendant urges the state did not prove beyond a reasonable doubt defendant had committed an aggravated assault.

The alleged crime occurred following a high school basketball game at Granite High School. The victim, hereinafter Kory, was a student at Highland High School. Kory was in the company of three of his friends, all were dressed in Highland letter jackets. Kory had been a half-back on his school's football team; his height is five feet ten inches, and he weighed 185 to 190 pounds at the time of the incident. Following the conclusion of the game, Kory and his three friends drove in his car from the school parking lot to a drive-in restaurant situated next to the school.

According to Kory, before he could park his vehicle in a stall, his car was surrounded by 15 to 20 Granite students. The defendant hereinafter identified as Bill, made an obscene gesture at the passengers in the car; one of the passengers reciprocated. The Granite students proceeded to kick and rock Kory's vehicle; Bill was not identified as one of the participants. Kory alighted from his vehicle and exclaimed:

"What the _____ you doing?"

Bill threw a snowball at Kory; Kory testified it struck him in the face. At that moment, Kory was situated by the driver's side of the vehicle and Bill was standing on the passenger's side. The two proceeded to the rear of the automobile, and a fight ensued. Kory admitted he was angry after his car had been kicked, and he had been hit with the snowball. Nevertheless, Kory testified he had his hands on his hips as he encountered Bill. Bill struck and kicked him; specifically Bill kicked him three or four times mostly on the upper legs and struck him several times in the face with his fist. The two ended up on the ground some distance from the vehicle. Kory testified the fight lasted 30 seconds, and he was adamant that he had never struck Bill.

Bill testified that he was six feet tall and weighed 195 pounds; he claimed that at the moment of their encounter both parties commenced fighting. He testified that at the conclusion of the fight, he assisted Kory to his feet. Bill claimed he also sustained bruises from the fight.

The only evidence concerning the extent of Kory's injuries was his response to a question as to whether he had received any medical attention as a consequence of the fight. He stated:

Yes, I had a tooth repaired—capped. I had to go to the doctor's office for the bruises and that's about it.

Defendant contends the record does not reveal any evidence to support finding of "serious bodily injury" a necessary element of aggravated assault. With this we agree.

Defendant was charged with a violation of Sec. 76–5–103(1)(a), which provides:

A person commits aggravated assault if he commits assault as defined in Sec. 76–5–102 and

(a) He intentionally causes serious bodily injury to another; . . .

76–5–102 provides:

(1) Assault is:

(a) An attempt, with unlawful force or violence, to do bodily injury to another; or

(b) A threat, accompanied by a show of immediate force or violence, to do bodily injury to another.

76–1–601, provides:

(8) "Bodily injury" means physical pain, illness, or any impairment of physical condition.

(9) "Serious bodily injury" means bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ or creates a substantial risk of death.

To support a conviction under Sec. 76–5–103(1)(a), which is a felony of the third degree, the state must prove the accused intentionally caused serious body injury, viz., that he had a specific intent to inflict serious bodily injury on the victim,[1] and such injuries were, in fact, caused by the assault.

76–2–103, provides:

A person engages in conduct:

(1) Intentionally . . . with respect . . . to a result of his conduct, when it is his conscious objective or desire to . . . cause the result.

The evidence in the record is not clearly persuasive that defendant, at the moment of confrontation and during the 30 second affray, had the specific intent to cause Kory serious bodily injury. The lower court did not make any specific findings of fact in regard to Bill's specific intent or the nature of Kory's injuries. Bill testified as to his dislike of the occupants of the vehicle because they were wearing Highland letter jackets. Bill expressed an opinion which was highly unfavorable regarding the athletes attending Highland. Clearly, Bill possessed a strong animosity towards the occupants of the car. There was testimony as to Bill's vigorous attack, and the witnesses expressed particular concern over the kicking. However, Kory testified the kicking was directed towards his legs. There was not such a clear disparity in size and age as to indicate that the attack with the fists was with an intent to do serious bodily injury.

The precise nature and extent of the injuries to Kory's teeth is not revealed in the record. On the date of disposition of the case, there is a minute entry which states:

Court met in chambers with counsel prior to entering courtroom.

Court called Dr. Hall this date. Dr. Hall informed the Court as to what dental work was done and the total cost involved.

\* \* \* \* \* \*

Order: Defendant assessed $546.00 restitution for Kory Jackson . . . .

The record merely indicates Kory sustained bruises and had a tooth capped. There was no evidence advanced to show the amount ordered, on restitution, had a reasonable relationship to the capping of the tooth. Such an item must be proved, as with damages generally. For that reason, we remand for an evidentiary hearing to determine the proper amount to be ordered in restitution.

Reviewing the evidence in the light most favorable to the state, it shows no proof that Kory's injuries created a substantial risk of death; that he sustained serious permanent disfigurement, or that he had a serious protracted loss or impairment of a function of any of his members or organs. Thus, there was no evidence Kory sustained serious bodily injury, and the court's finding defendant committed an aggravated assault cannot be sustained.[2]

1. State v. Peck, Utah, 542 P.2d 1084 (1975); State v. Howell, Utah, 554 P.2d 1326 (1976).

2. See State v. Mayo, 13 Or.App. 582, 511 P.2d 456 (1973); State v. Dillon, 24 Or.App. 695, 546 P.2d 1090 (1976).

There is evidence to sustain a finding of an assault as set forth in Sec. 76–5–102(1)(a), a lesser included offense of aggravated assault. Therefore, the finding of the Juvenile Court that defendant was within its jurisdiction must be sustained.

WILKINS and HALL, JJ., concur.

ELLETT, Chief Justice (dissenting).

I would affirm the trial court. The appellant was not charged with a crime. He was adjudged to be within the jurisdiction of the Juvenile Court by reason of having assaulted and intentionally caused serious bodily injury to another.

Section 55–10–105, U.C.A.1953, Replacement Volume 6A reads:

(1) Proceedings in children's cases shall be regarded as civil proceedings, with the Court exercising equitable powers.

(2) *An adjudication by a juvenile court that a child is within its jurisdiction under section 55–10–77 shall not be deemed a conviction of a crime, except in cases involving traffic violations; no such adjudication shall operate to impose any civil disabilities upon the child nor to disqualify the child for any civil service or military service or appointment.*

(3) Neither the record in the juvenile court nor any evidence given in the juvenile court shall be admissible as evidence against the child in any proceedings in any other court, with the exception of cases involving traffic violations. [Emphasis added.]

Therefore, the appellant is not convicted of the crime of aggravated assault as claimed in the prevailing opinion. The Juvenile Court found that the appellant comes within the provisions of Section 77 of the Juvenile Court Act of 1965, as amended, by reason of the finding that said child assaulted and intentionally caused serious bodily injury to Kory Jackson.

The result would be the same under Section 77 mentioned above if there had only been a simple assault. The appellant would have been within the jurisdiction of the Juvenile Court whether he had committed a simple assault or an assault which caused serious bodily injury.[1] I, therefore, am unable to see any reason for disturbing the record made by the Juvenile Court in this matter.

As to the remanding of the case for the purpose of having a trial on the cost of the tooth repair, I do not think a trial on that matter is required. In the first place, no complaint is made on appeal in that regard; and in the second place, the doctor would undoubtedly testify the same as he informed the judge while counsel were with the judge at the time of the call.

There is another reason which leads me to believe that further evidence need not be taken. Section 55–10–100(7), U.C.A.1953, as amended in Replacement Volume 6A provides:

(7) The court may order that the child be required to repair or replace or to otherwise make restitution for damages or loss caused by his wrongful act,

. . . . .

It appears that the amount of restitution ordered by the Court was only for the cost of repairing the tooth. However, the total harm done was greatly in excess of the dental bill—there was the pain and suffering which the victim endured as well as having to go through life with a repaired broken tooth.

I, therefore, would simply affirm the judgment rendered by the Juvenile Court.

CROCKETT, J., concurs in the dissenting opinion of ELLETT, C. J.

---

1. A front *tooth is a member of the body and the* breaking of it is mayhem (a felony). See *Keith v. State*, 89 Tex.Cr.App. 264, 232 S.W. 321; 16 A.L.R. 949; *High v. State*, 26 Tex.App. 545, 10 S.W. 238; 4 Blackstone Com. 205. Annotation in 16 A.L.R. 969g. The breaking of a front tooth consists of a more serious offense than a simple assault.