The STATE of Utah, Plaintiff and Respondent,

v.

Edward Lee DAY, Defendant and Appellant.

No. 14970.

Supreme Court of Utah.

Dec. 1, 1977.

**704**

Sumner J. Hatch, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Earl F. Dorius, Paul Tinker, Asst. Attys. Gen., Salt Lake City, Noall T. Wootton, Utah County Atty., Provo, for plaintiff and respondent.

ELLETT, Chief Justice:

The driver of defendant's truck in which defendant was riding almost collided with a truck driven by the deceased. An argument resulted between the two drivers, and defendant struck the deceased on the head with a heavy wooden stick, shattering his skull and causing his death.

The defendant was charged with, and convicted by a jury of, the crime of murder in the second degree. He appeals to this Court and claims errors as follows:

(A) The court did not define the phrase "evidencing a depraved mind indifferent to human life."

(B) The court told the jury if they found the defendant was guilty of second degree murder, they should disregard the included offense of manslaughter.

(C) The court permitted the state to present rebuttal evidence as to the character of the deceased.

(D) The court allowed a picture of the deceased to be received into evidence.

(E) The court gave an instruction regarding justifiable homicide, but failed to give defendant's instruction that the question of justification must be viewed through the eyes of the actor.

The evidence would justify a finding that the defendant struck the fatal blow as the deceased was turning to walk away from the argument, and that neither the defendant nor his driver was threatened with any violence from the deceased. The evidence was sufficient to justify the verdict of guilt, and the defendant does not claim to the contrary. His claims of error will be treated in the order in which he asserts them.

(A)

The statute [1] under which the appellant was charged reads:

(1) Criminal homicide constitutes murder in the second degree if, under circumstances not amounting to murder in the first degree or manslaughter, the actor:

\* \* \* \* \* \*

1. Laws of Utah, 1975, Ch. 53, Sec. 76–5–203; also 76–5–203, U.C.A.1953 (1975 Pocket Supp.).

(c) Acting under circumstances evidencing a depraved indifference to human life, he recklessly engaged in conduct which creates a grave risk of death to another and thereby causes the death of another; . . . .

The appellant did not present to the court a written instruction defining the phrase, "evidencing a depraved *mind* indifferent to human life" of which he now complains. In fact, that phrase is not found in the statute. The appellant undoubtedly now means that the court should have defined the phrase, "a depraved *indifference* to human life."

■ Ordinarily, non-technical words of ordinary meaning should not be elaborated upon in the instructions given by the court. It is presumed that jurors have ordinary intelligence and understand the meaning of ordinary words like "depraved" and "indifference."

■ While the jury was deliberating, they requested a dictionary. Counsel for the defendant objected to the request and stated, "I think we all know what they are talking about." The court inquired, "How many definitions of 'depraved' are there?" Counsel for the defendant answered, "Numbered there are three with subheadings under each one of them." It is difficult to believe that the court, by an instruction, could have improved upon the definitions contained in the dictionary. By objecting to the dictionary being given to the jury, it would seem that counsel for defendant cannot feel that an instruction defining the term should have been submitted. Besides, if such an instruction had been desired, counsel should have presented a written request therefor wherein he tendered to the court an appropriately worded definition as he is required to do.[2]

■ This Court will notice the failure to give an instruction even though it was not requested when the failure to give it would plainly result in a miscarriage of justice. This is not such a case.

**(B)**

■ There was no error in telling the jury to disregard the instructions regarding manslaughter if they found all the elements of murder in the second degree to be established by proof beyond a reasonable doubt.

**(C)**

■ The evidence presented by the defendant, if believed, would leave the impression that the deceased was a vulgar-mouthed, overbearing type of fellow. The state was permitted to give evidence of his reputation for clean language and peaceable disposition, as it related to his conduct on the day of the incident.[3] There was no reversible error in allowing the testimony.

**(D)**

■ The state had the burden of establishing the identity of the deceased as being the one slain by the defendant. The doctors who performed the autopsy to determine the cause of death did not know the deceased and, therefore, the picture was proper to enable the state to meet its burden of proof. The objection was that the suit worn in the picture was a formal one and not work clothes. There is no merit to this contention of error.

**(E)**

■ The instructions of the court, taken as a whole, clearly indicated to the jury that if justifiable homicide was indicated, it must be determined from the point of view of the defendant. In fact, the first sentence of the very instruction which appellant claims to be erroneous states: "A person is justified in threatening or using force against another when and to the extent that *he reasonably believes* that such force is necessary to defend himself or a third person against such other's imminent use of unlawful force; . . . ." (Emphasis added.)

**2.** *State v. Blea,* 20 Utah 2d 133, 434 P.2d 446 (1967); *State v. Owens,* 15 Utah 2d 123, 388 P.2d 797 (1964).

**3.** Rule 47, Utah Rules of Evidence (1971).

The instruction clearly shows that it is a subjective test that determines the question of justification.

There was no error made at the trial, and the defendant was fairly treated and properly convicted.

There is another matter that could not have been overlooked by the jury. The defendant called his son, a lad of seventeen years, who testified that he was the driver of the defendant's truck and a participant in the argument preceding the fatal blow. The son said he weighed 220 pounds and was 6′3″ tall. All the independent witnesses who saw the altercation testified positively that the son was *not* the driver of defendant's truck; that the driver was a small man, about 5′6″ tall; and that they all saw the driver at the preliminary hearing wherein the defendant was bound over to stand trial in the district court.

The verdict of the jury was justified by the evidence and the judgment is affirmed. No costs are awarded.

CROCKETT and HALL, JJ., concur.

MAUGHAN and WILKINS, JJ., concur in the result.