2008 UT App 233

**STATE of Utah, Plaintiff and Appellee,**

v.

**Stephen Edgar ROWLEY, Defendant and Appellant.**

**No. 20070053–CA.**

Court of Appeals of Utah.

June 19, 2008.

Debra M. Nelson and Heather A. Brereton, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Jeanne B. Inouye, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and McHUGH.

## OPINION

McHUGH, Judge:

¶1 Defendant Stephen Edgar Rowley appeals his conviction for two counts of aggravated sexual abuse of a child, a first degree felony, *see* Utah Code Ann. § 76–5–404.1 (2003).[1] Rowley argues that there was insufficient evidence to support the jury's determination that he held a position of special trust as defined by the Utah Code, *see id.* § 76–5–404.1(4)(h). We affirm.

## BACKGROUND

¶2 On October 7, 2005, eleven-year-old A.R. spent the night at her best friend's (Friend) house; A.R. went to Friend's house approximately twice a month, and had slept over approximately sixteen times prior to that date. A.R.'s mother gave A.R. permission to sleep over that night.

¶3 Although Rowley, Friend's father, was not always at the home when A.R. was there, A.R. testified that he was home during the night at the times she slept over. She further testified that Rowley had previously babysat and supervised her.

¶4 On the evening of October 7, A.R. and Friend were watching television with Rowley—Friend's mother had gone to bed. According to Rowley's testimony at trial, he awakened around 1:00 or 1:30 a.m. and told A.R., who had fallen asleep while watching television, "[I]t's time for bed, you need to go to bed." At that point, she went down the hall to Friend's bedroom, where Friend was already asleep. Shortly thereafter, Rowley

---

1. Rowley was charged under the 2003 version of the statute, and we thus refer to that version in our analysis. The Utah Legislature has since amended the penalties for aggravated sexual abuse of a child under section 76–5–404.1, which amendment did not substantively affect the relevant section at issue before this court. *See* Penalties for Sexual Offenses and Kidnapping, ch. 339, § 19, 2007 Utah Laws 2060, 2072–73 (codified at Utah Code Ann. § 76–5–404.1 (Supp.2007)).

went into Friend's bedroom because he thought Friend may have been having an asthma attack. After waking up, Friend told him that she had had a bad dream. Rowley then got into bed, lying between the two girls. While in the bed, Rowley molested A.R. by touching her breasts and genitals.

¶ 5 Rowley was initially charged with one count of aggravated sexual abuse of a child. During a preliminary hearing, Rowley challenged the classification of *aggravated* sexual abuse of a child, arguing that the evidence was insufficient to support a finding that he was in a position of special trust as defined by Utah Code section 76–5–404.1(4)(h), *see id.* The trial court denied Rowley's motion. The State then amended the information to include a second count of aggravated sexual abuse of a child. A hearing on Rowley's subsequently filed motion to quash was held, during which Rowley argued that the evidence was insufficient to support two convictions of aggravated sexual abuse of a child and that the State should instead charge him with one count of sexual abuse of a child, a second degree felony, *see id.* § 76–5–404.1(3). The trial court denied the motion to quash. The court likewise denied Rowley's motion for a directed verdict, in which he again argued, in part, that the State did not "meet its burden in proving that Rowley occupied a position of special trust."[2]

¶ 6 After a jury trial, Rowley was convicted on both counts of aggravated sexual abuse of a child—rather than the lesser included charge of sexual abuse of a child. He now appeals, seeking a reversal of the two first degree felony convictions for aggravated sexual abuse and entry instead of convictions for sexual abuse of a child, a second degree felony. *Compare id., with id.* § 76–5–404.1(4).

## ISSUE AND STANDARDS OF REVIEW

¶ 7 Rowley argues that his convictions of aggravated sexual abuse of a child should be reversed because "the evidence fails to establish that he was in a position of authority over [A.R.] and able to use that authority to exercise undue influence over [A.R.]."

¶ 8 An appellate court "will reverse a jury conviction for insufficient evidence only when the evidence is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *State v. Shumway*, 2002 UT 124, ¶ 15, 63 P.3d 94. In addition, we "review[ ] the trial court's interpretation of a statute for correctness, giving no deference to the trial court's determinations." *State v. Beason*, 2000 UT App 109, ¶ 16, 2 P.3d 459 (internal quotation marks omitted).

## ANALYSIS

I. Position of Special Trust Under Section 76–5–404.1(4)(h)

¶ 9 The State charged Rowley with aggravated sexual abuse pursuant to Utah Code section 76–5–404.1(4)(h), which states:

> A person commits aggravated sexual abuse of a child when in conjunction with the offense described in Subsection (2) any of the following circumstances have been charged and admitted or found true in the action for the offense:
>
> . . . .
>
> . . . the offense was committed by a person who occupied a position of special trust in relation to the victim; *"position of special trust" means that position occupied by a person in a position of authority, who, by reason of that position is able to exercise undue influence over the victim, and includes, but is not limited to, . . . [a] baby-sitter . . . .*

> . . . [I]n this situation, . . . the testimony was sufficient enough that Mr. Rowley was in that position. . . .
>
> . . . [That] is an issue that [defense counsel] should be allowed to argue to the jury. . . .

---

2. In denying Rowley's motion for a directed verdict, the trial court explained that

> when a child under the age of 11 years old goes over to her friend's parents' house and there are two parents present, I think the perception is both parents are sitters and have some authority and undue influence over that child.

Utah Code Ann. § 76-5-404.1(4)(h) (2003) (emphasis added).

¶ 10 There are two ways under section 76-5-404.1(4)(h) to show that a defendant held a position of special trust. First, the defendant may be found to occupy a position that is specifically identified in the statute, such as a "baby-sitter." *See id.* Second, even if the defendant does not hold any of the positions expressly noted in the statute, the defendant may be found to be in a position of authority through which he or she was able to exert undue influence over the child. *See id.; see also State v. Cox*, 2007 UT App 317, ¶ 17, 169 P.3d 806 ("[S]o long as [the d]efendant was able to exercise undue influence over [the victim] by reason of his position . . ., he could be considered a person occupying a position of special trust. . . ."); *Beason*, 2000 UT App 109, ¶¶ 20-21, 2 P.3d 459 ("[T]he specification of persons presumed to occupy a position of special trust is not exclusive, as indicated by the phrase 'includes, but is not limited to,' and can apply to anyone not explicitly excluded."). The State contends that each of those approaches are satisfied here. Specifically, it argues that Rowley was a baby-sitter and that Rowley held a position of authority that allowed him to exercise undue influence over A.R.

¶ 11 In response, Rowley argues that "[t]he plain language of [section 76-5-404.1(4)(h) ] makes clear that the legislature wanted to target personal, familiar or confident dependant relationships which potentially encompass a 'special trust' . . ., rather than those relationships which merely involve

3.   " 'When examining a statute, we look first to its plain language as the best indicator of the legislature's intent and purpose in passing the statute.' " *State v. Beason*, 2000 UT App 109, ¶ 19, 2 P.3d 459 (quoting *Wilson v. Valley Mental Health*, 969 P.2d 416, 418 (Utah 1998)). Because section 76-5-404.1(4)(h) is unambiguous and has "only one plain meaning, . . . we need not resort to other methods of interpretation." *See id.* ¶ 22.

4.   Jury instruction number 38 states:

You are instructed that a "position of special trust" means that position occupied by a person in a position of authority, who, by reason of that position is able to exercise undue influence over the victim and includes; but is not

an 'ordinary trust.' " We disagree, however, because the express language of section 76-5-404.1(4)(h) specifies that a person in a "position of special trust" is someone who has an authoritative position by which he or she is able to exert undue influence over the victim.[3] *See* Utah Code Ann. § 76-5-404.1(4)(h). The statute does not include a requirement that a "personal, familiar or confident dependant relationship[ ]" be proved. Instead, the focus of the statute is on the defendant's "position of authority" over the victim. *See id.* The legislature intended to punish more harshly adults who use such positions of authority to "exercise undue influence over" a child. *See id.*

¶ 12 The jury was instructed on the elements of aggravated sexual abuse of a child, including the definition of "position of special trust."[4] On appeal, Rowley has not challenged that jury instruction, which contains no reference to "personal, familiar or confident dependant relationships." Based upon the evidence presented, the jury found that Rowley held such a position.

## II.   The Evidence Was Sufficient to Support the Conviction

¶ 13 Rowley asserts that he does not fall under section 76-5-404.1(4)(h)'s definition of a person in a position of special trust because the evidence did not show that he and A.R. had "the type of relationship . . . that allowed Rowley to exercise undue influence over [her]."[5] As previously discussed, section 76-5-404.1(4)(h) does not require that Rowley and A.R. have a close, intimate rela-

limited to, a youth leader or recreational leader who is an adult, adult athletic manager, adult coach, teacher, counselor, religious leader, doctor, employer, foster parent, baby-sitter, adult scout leader, natural parent, stepparent, adoptive parent, legal guardian, grandparent, aunt, uncle, or adult cohabitant of a parent.

5.   Rowley also claims that he was merely "an adult in the home where the child was present" and did not perform the tasks that would raise him to a baby-sitter's status. Because we find that there was sufficient evidence for the jury to convict Rowley of aggravated sexual abuse under section 76-5-404.1(4)(h)'s general definition, we need not address whether the evidence was sufficient to establish that he was A.R.'s baby-sitter as contemplated by the statute.

tionship for Rowley to hold a position of special trust. If he "was able to exercise undue influence over [A.R.] by reason of his position as" her best friend's father and a supervising adult in the home where she frequently spent the night, it is enough to satisfy section 76–5–404.1(4)(h). *See Cox*, 2007 UT App 317, ¶ 17, 169 P.3d 806.

¶ 14 There was conflicting evidence on this point. At trial, the State introduced, among other evidence, the following: (1) Rowley was A.R.'s best friend's father; (2) A.R. slept over at his home about sixteen times prior to the abuse, with her mother's express permission; (3) Rowley lived at the home and, although not always present when A.R. arrived, would always come home at some point; (4) A.R. testified that Rowley babysat and supervised her when she visited Friend's home; (5) Friend's mother testified that when Rowley was home, he was "expect[ed] ... to supervise the kids"; and (6) there were at least two instances on the weekend of the abuse where Rowley exerted authority over A.R.—he told A.R. to go to bed the night the abuse occurred, and the next day he ordered the girls to climb down from a tree. In defense, Rowley introduced testimony that (1) he was a nonparticipant in family activities due to his frequent intoxication; (2) when A.R. visited Friend, Rowley would not be there sometimes; (3) A.R. testified that she never spoke with Rowley other than sometimes to say "hi"; (4) Rowley routinely drank a pint of Vodka each day on the weekend and would do little more than sit in his recliner and watch television; and (5) A.R.'s mother did not know Rowley lived in the home. The jury resolved this conflict in favor of the State, concluding that Rowley did occupy a position of special trust with respect to A.R.

■ ¶ 15 "In reviewing a jury verdict, we view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict." *State v. Beason*, 2000 UT App 109, ¶ 2, 2 P.3d 459. Viewing the evidence under this standard, we cannot say that "the evidence is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt" that Rowley held a position of special trust with respect to A.R. *See State v. Shumway*, 2002 UT 124, ¶ 15, 63 P.3d 94. It is reasonable to conclude that Rowley was an authority figure to an eleven-year-old girl who frequently spent the night at his home and over whom he exercised some amount of supervision.[6] Indeed, the fact that Rowley was able to get into bed with A.R., without her becoming upset, is evidence from which a jury could infer that Rowley held a position of special trust that he used to exert undue influence over A.R.

■ ¶ 16 The evidence shows that A.R. said "yes, please stop" when Rowley asked her if his touching "bothered" her, and that she again whispered for him to "please stop" and removed his hand after he touched her breast area, unzipped her pants, and touched her genitals. Her ability to counter his advances, in some limited fashion, could be an indication that Rowley did not have complete authority over A.R. However, the jury could also have found that the fact she quietly and politely did so suggests that she was influenced by his position of authority. A.R. testified that she did not push him away "[b]ecause [Friend] was right there"; and she further testified that she "was too scared to talk to him" the next morning at breakfast, did not tell anyone at Rowley's home besides Friend because she was afraid she "might get in trouble" with Rowley, and did not tell her mother in the car about what happened but instead waited until they were at home "where [she] felt comfortable." It is within the province of the jury to weigh the evidence, to decide what weight to give any conflicting evidence, and to make credibility determinations; we will not substitute our impressions for the jury's findings on those matters.[7] *See State v. Boyd*, 2001 UT 30,

---

6. Rowley's wife worked from home and "expect[ed Rowley] to supervise the kids" when she was at the computer.

7. Our decision today should not be read to suggest that there are no limits on when a person can be held to be in a position of special trust to a child. Rather, our decision today is limited to the facts of this case, which we hold were sufficient to support the jury verdict.

¶ 16, 25 P.3d 985; *see also State v. Romero,* 554 P.2d 216, 218–19 (Utah 1976) (stating that the job of an appellate court is to determine whether the evidence sufficiently supports the jury's guilty verdict).

## CONCLUSION

¶ 17 The State produced "some evidence, including reasonable inferences, from which [a] finding[ ] . . . [that Rowley held a position of special trust over A.R. and therefore committed aggravated sexual abuse] can reasonably be made." *See State v. Booker,* 709 P.2d 342, 345 (Utah 1985). We therefore affirm the jury's verdict finding Rowley guilty of two counts of aggravated sexual abuse under section 76–5–404.1(4).

¶ 18 I CONCUR: RUSSELL W. BENCH, Judge.

¶ 19 I CONCUR IN THE RESULT: JAMES Z. DAVIS, Judge.