2013 UT App 271

STATE of Utah, Plaintiff and Appellee,

v.

Angela Dawn EKSTROM, Defendant and Appellant.

No. 20111111–CA.

Court of Appeals of Utah.

Nov. 15, 2013.

Ronald Fujino, for Appellant.

John E. Swallow and John J. Nielsen, for Appellee.

Judge CAROLYN B. McHUGH authored this Opinion, in which Judge MICHELE M. CHRISTIANSEN and Senior Judge

RUSSELL W. BENCH concurred.[2]

Opinion

McHUGH, Judge:

¶ 1 Angela Dawn Ekstrom appeals from her conviction for aggravated assault, a third degree felony, *see* Utah Code Ann. § 76-5-103 (LexisNexis 2008) (current version at *id.* (2012)). Ekstrom claims that there was insufficient evidence of "serious bodily injury," that trial counsel performed deficiently in approving jury instructions that failed to define "serious bodily injury," that a police officer improperly opined on the ultimate issue as an undisclosed expert, and that trial counsel performed ineffectively by failing to call an eyewitness identification expert. We conclude that there was sufficient evidence presented to support the jury's verdict but that the jury was not properly instructed on the definition of "serious bodily injury." As a result, we reverse Ekstrom's conviction and remand for a new trial, without considering the other issues she advances on appeal.

## BACKGROUND [3]

¶ 2 On June 26, 2010, an individual (Witness) was driving when he saw and heard Ekstrom and a man (Victim) shouting at each other "really close, like right at each other's face[ ]" near an intersection in Salt Lake City. Out of concern, Witness pulled his car to the side of the road to observe the incident. Ekstrom began hitting Victim with her hands, and Victim responded by embracing Ekstrom in an apparent effort to stop her from hitting him. After a few seconds, Victim released Ekstrom and began walking toward a bicycle that had been left nearby. Witness saw Ekstrom grab "what looked to be an irrigation pipe, [a] sprinkler pipe[,] and beg[in] to strike [Victim] with it." Witness called 911 and reported the incident. Witness saw Ekstrom land numerous blows to Victim's legs, hand, and torso and saw her attempt to strike Victim in the head. As

Victim retreated on the bicycle, Ekstrom struck Victim on the back, breaking the pipe.

¶ 3 A few minutes later, police officers arrived and found Ekstrom a couple blocks from the intersection where the incident had occurred. Ekstrom told one of the officers that she had a "verbal dispute" with her boyfriend near the intersection, after which she had suffered a seizure and had just awoken at her current location. Police officers also spoke with Victim and took several photographs of the injuries to his head and face. The item used to strike Victim was never found.

¶ 4 On July 14, 2010, Ekstrom was charged with aggravated assault. At a jury trial on May 24, 2011, Witness and two of the responding officers testified but Victim and Ekstrom did not. During cross-examination Witness acknowledged, "When I saw [Ekstrom] grab a weapon and begin to strike [Victim] with a weapon, I didn't know that it was a pipe, I didn't know what it was. It looked to be an irrigation pipe...." Witness did not provide any other information as to whether the pipe was made of metal or plastic.

¶ 5 The prosecution introduced the photographs of Victim's head and face into evidence and then asked one of the responding officers (First Officer) whether the injuries he saw were consistent with Victim having been hit on the head with a pipe. First Officer said yes. During cross-examination trial counsel asked First Officer, "[W]hen you were told pipe ... are you picturing a metal pipe or a plastic pipe?" First Officer responded, "At that time, a metal pipe." On redirect, the prosecution asked First Officer to give his opinion of what had happened to Victim. Over trial counsel's objection, the trial court permitted First Officer to testify that Victim "was assaulted with a blunt object that was described as a pipe."

---

2. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11-201(6).

3. "When reviewing a jury verdict, we examine the evidence and all reasonable inferences drawn

therefrom in a light most favorable to the verdict, and we recite the facts accordingly." *State v. Kruger*, 2000 UT 60, ¶ 2, 6 P.3d 1116. "We present conflicting evidence only when necessary to understand issues raised on appeal." *Id.*

¶ 6 The jury found Ekstrom guilty of aggravated assault. The trial court sentenced Ekstrom to an indeterminate prison term not to exceed five years but then suspended that sentence and ordered Ekstrom to serve six months in jail and three years of probation. Ekstrom appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 First, Ekstrom argues that the evidence was insufficient to establish either that Victim suffered "serious bodily injury" or that Ekstrom used a "dangerous weapon." "An appellate court may overturn a criminal conviction for insufficiency of evidence only 'when it is apparent that there is not sufficient competent evidence as to each element of the crime charged for the fact-finder to find, beyond a reasonable doubt, that the defendant committed the crime.'" *State v. Gardner*, 2007 UT 70, ¶ 24, 167 P.3d 1074 (quoting *State v. Boyd*, 2001 UT 30, ¶ 13, 25 P.3d 985).

■ ¶ 8 Second, Ekstrom argues that the jury instructions improperly omitted the definition of "serious bodily injury." Because this issue was not preserved, Ekstrom argues that her trial counsel rendered ineffective assistance in failing to ensure that such an instruction was included. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.[4]

¶ 9 Because we reverse Ekstrom's conviction and remand for a new trial based on her trial counsel's ineffective performance, we need not reach her other claims raised on appeal.

4. Ekstrom also argued in her brief that the trial court's failure to recognize and correct the defective instructions constituted plain error. However, Ekstrom conceded at oral argument that trial counsel invited any error when he approved the jury instructions, and thus Ekstrom is not entitled to relief under the doctrine of plain error. *See State v. Geukgeuzian*, 2004 UT 16, ¶¶ 9–12, 86 P.3d 742.

5. Ekstrom does not dispute that she assaulted Victim. An assault is:

## ANALYSIS

### I. Sufficiency of the Evidence

¶ 10 Ekstrom first challenges the sufficiency of the evidence to support the conviction of aggravated assault. In particular, Ekstrom claims that the evidence did not establish the required elements of "serious bodily injury" and the "use of a dangerous weapon," because Victim did not actually suffer serious bodily injury. Ekstrom's argument misconstrues the elements of aggravated assault.

¶ 11 Utah Code section 76–5–103 provides in part,

(1) A person commits aggravated assault if he commits assault as defined in Section 76–5–102[ [5]] and he:

(a) intentionally causes serious bodily injury to another; or

(b) under circumstances not amounting to a violation of Subsection (1)(a), uses a dangerous weapon as defined in Section 76–1–601 or other means or force likely to produce death or serious bodily injury.

Utah Code Ann. § 76–5–103(1) (LexisNexis 2008) (current version at *id.* (2012)). Here, the State argues that the facts supported a conviction for aggravated assault because the pipe used by Ekstrom to hit Victim is a dangerous weapon. The Utah Legislature has defined "dangerous weapon" to include "any item capable of causing death or serious bodily injury." *Id.* § 76–1–601(5) (LexisNexis 2012).

■ ¶ 12 Thus, to prove aggravated assault, the State was not required to establish that Victim actually suffered "serious bodily injury." *State v. Peterson*, 681 P.2d 1210, 1219 (Utah 1984) (noting, under the variant of aggravated assault requiring the state to prove the use of "such means of force likely to produce death or serious bodily injury,"

(a) an attempt, with unlawful force or violence, to do bodily injury to another;
(b) a threat, accompanied by a show of immediate force or violence, to do bodily injury to another; or
(c) an act, committed with unlawful force or violence, that causes bodily injury to another or creates a substantial risk of bodily injury to another.
Utah Code Ann. § 76–5–102(1) (LexisNexis 2012).

that "[i]t is not necessary to prove that death or serious bodily injury occurred, but only that the actor used means or force likely to have that result" (citation and internal quotation marks omitted)); *see also State v. Brown*, 853 P.2d 851, 860 (Utah 1992) (rejecting a sufficiency of the evidence challenge to an aggravated assault charge where defendant threatened, but did not harm, victim with a wrench); *State v. C.D.L.*, 2011 UT App 55, ¶ 18, 250 P.3d 69 ("Even though the evidence in this case shows that Husband did not use his vehicle in a way that *actually* caused death or serious bodily injury, there is sufficient evidence from which a reasonable jury could conclude that Husband purposefully and angrily used his vehicle as a ramming device to hit Wife's vehicle—a use that the jury could reasonably conclude was capable of causing serious bodily injury or death."). Instead, Ekstrom could be found guilty of aggravated assault if she used an item capable of causing serious bodily injury during the altercation. *See* Utah Code Ann. § 76-1-601(5) (defining "dangerous weapon"); *State v. Ireland*, 22 Utah 2d 17, 447 P.2d 375, 376 (1968) (stating that a jury should decide whether a razor blade was used in a way that rendered it a dangerous weapon); *C.D.L.*, 2011 UT App 55, ¶ 16, 250 P.3d 69 ("[B]ecause an item must simply be *capable* of causing death or serious bodily injury, an item not necessarily manufactured as a dangerous weapon may nonetheless become one.").[6] Accordingly, we examine the "evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict" to determine if there is sufficient evidence to support a finding that Ekstrom used an item capable of causing serious bodily injury during her altercation with Victim. *See State v. Rowley*, 2008 UT App 233, ¶ 15, 189 P.3d 109 (citation and internal quotation marks omitted).

■ ¶ 13 At the close of the State's case, Ekstrom moved for a directed verdict based, in part, on the State's failure to produce evidence of the type of pipe involved. Ac-

cording to Ekstrom, only a metal pipe could constitute a dangerous weapon. However, we agree with the State and the trial court that irrespective of whether the pipe was metal or plastic, the jury could have found that the pipe was capable of causing serious bodily injury when used to strike Victim repeatedly. *See, e.g., Sanders v. State*, 623 So.2d 428, 430–31 (Ala.Crim.App.1993) (holding that a PVC pipe with a jagged edge was a deadly weapon); *People v. Macklem*, 149 Cal.App.4th 674, 57 Cal.Rptr.3d 237, 240, 242 (2007) (affirming a defendant's conviction for assault with a deadly weapon based on the defendant's use of a PVC pipe in the attack); *State v. Boiteux*, 74 So.3d 731, 735–36 (La.Ct. App.2011) (holding that evidence was sufficient to support a conviction for aggravated battery where defendant struck the victim with a metal pipe). While the jury need not have found that the pipe used by Ekstrom was a dangerous weapon, there was evidence in the record from which it could have made such a finding. Therefore, Ekstrom is not entitled to relief on the basis that the evidence was insufficient to support the jury's verdict.

## II. Ineffective Assistance of Counsel

■ ¶ 14 Ekstrom next argues that her trial counsel was ineffective for failing to object to the absence of a jury instruction defining "serious bodily injury," which she claims is an essential component of aggravated assault. The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "To support an ineffective assistance of counsel claim, a defendant must demonstrate, first, 'that counsel's performance was deficient' and, second, 'that counsel's deficient performance was prejudicial.'" *State v. Walker*, 2010 UT App 157, ¶ 13, 235 P.3d 766 (quoting *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92). To establish deficient performance, a defendant

---

6. The primary authority Ekstrom relies on for her argument is *In re Besendorfer*, 568 P.2d 742 (Utah 1977). However, *Besendorfer* is inapposite because the case involved a proceeding under the variant of aggravated assault requiring proof that

the person intentionally caused serious bodily injury to another. *See id.* at 743–44; *see also* Utah Code Ann. § 76–5–103(1)(a) (LexisNexis 2008) (current version at *id.* (2012)).

"must identify specific acts or omissions demonstrating that counsel's representation failed to meet an objective standard of reasonableness." *State v. Montoya*, 2004 UT 5, ¶ 24, 84 P.3d 1183 (citation and internal quotation marks omitted). In doing so, "[a] defendant must overcome the strong presumption that [her] trial counsel rendered adequate assistance, by persuading the court that there was no conceivable tactical basis for counsel's actions." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (emphasis omitted) (citations and internal quotation marks omitted); *accord State v. Gunter*, 2013 UT App 140, ¶ 30, 304 P.3d 866. "The court 'give[s] trial counsel wide latitude in making tactical decisions and will not question such decisions unless there is no reasonable basis supporting them.'" *Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (alteration in original) (citation omitted); *accord Gunter*, 2013 UT App 140, ¶ 30, 304 P.3d 866; *see also Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (indicating that counsel should be given wide latitude in making tactical decisions).

■ ¶ 15 "The Due Process Clause of the Fourteenth Amendment 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Francis v. Franklin*, 471 U.S. 307, 313, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (quoting *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)); *accord State v. Kelson*, 2012 UT App 217, ¶ 16, 284 P.3d 695, *cert. granted*, 298 P.3d 69 (Utah Jan. 14, 2013) (No. 20120843). "[W]e review jury instructions in their entirety to determine whether the instructions, taken as a whole, fairly instruct the jury on the applicable law." *State v. Stringham*, 957 P.2d 602, 608 (Utah Ct.App.1998) (citation and internal quotation marks omitted). "So long as the jury is informed what each element is and that each must be proved beyond a reasonable doubt, the instructions taken as a whole may be adequate...." *State v. Laine*, 618 P.2d 33, 35 (Utah 1980) (emphasis omitted). "Ordinarily, non-technical words of ordinary meaning should not be elaborated upon in the instructions given by the court." *State v. Day*, 572 P.2d 703, 705 (Utah 1977). In contrast, an instruction defining a term is

necessary when the term "has a technical legal meaning so different from its ordinary meaning that the jury, without further explanation, would misunderstand its import in relation to the factual circumstances." *Compton v. State*, 931 P.2d 936, 941 (Wyo. 1997) (holding that the trial court erred in failing to give the jury the definition of "substantial step" as used in the context of attempted sexual assault). Furthermore, trial counsel's performance may be deficient if counsel fails to object or otherwise act to remove the ambiguity of two jury instructions where, although individually correct as a matter of law, the jury instructions used together, "with no explanation or clarification as to their applicability[,] created the potential for confusion and could have misled the jury." *See State v. Hutchings*, 2012 UT 50, ¶¶ 19–23, 285 P.3d 1183.

■ ¶ 16 As discussed above, Utah's aggravated assault statute provides that a person commits aggravated assault if she commits an assault while using a weapon capable of inflicting death or serious bodily injury. Utah Code Ann. § 76–5–103 (LexisNexis 2008) (current version at *id.* (2012)); *see also id.* § 76–1–601(5) (LexisNexis 2012) (defining "dangerous weapon" as any item capable of inflicting death or serious bodily injury). The Utah Legislature has also created three classifications of bodily injury. It has defined "bodily injury" as "physical pain, illness, or any impairment of physical condition," *id.* § 76–1–601(3); "substantial bodily injury" as "bodily injury, not amounting to serious bodily injury, that creates or causes protracted physical pain, temporary disfigurement, or temporary loss or impairment of the function of any bodily member or organ," *id.* § 76–1–601(12); and "serious bodily injury" as "bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or creates a substantial risk of death," *id.* § 76–1–601(11). These different categories of injury are not subject to analysis using ordinary meaning. *See Day*, 572 P.2d at 705. Rather, the Utah Legislature has assigned each a technical legal meaning that requires further explanation. *See Compton*, 931 P.2d at 941. In-

deed, the Utah appellate courts have been asked repeatedly to clarify the injuries that fall within each classification.[7] While a "bodily injury" constitutes the lowest tier in the injury scale, *see* Utah Code Ann. § 76–1–601(3), the term is used as part of the definition for both "substantial bodily injury," which itself is categorized, in part, as "bodily injury, not amounting to serious bodily injury," *id.* § 76–1–601(12), and "serious bodily injury," *id.* § 76–1–601(11).

¶ 17 In this case, Jury Instruction 6 directed the jury on the necessary elements for a conviction of aggravated assault:

> Before you can convict the defendant of the crime of AGGRAVATED ASSAULT, you must find from the evidence, beyond a reasonable doubt, all of the following elements:
>
> 1 That on or about the 26th day of June, 2010, in Salt Lake County, State of Utah, the defendant, Angela Dawn Ekstrom, assaulted [Victim]; and
>
> 2 That the said defendant intentionally or knowingly assaulted [Victim]; and
>
> 3 That the said defendant then and there used a dangerous weapon or such other means or force likely to produce death or serious bodily injury.

If you believe that the evidence establishes each and all of the essential elements of the offense beyond a reasonable doubt, it is your duty to convict the defendant. On the other hand, if the evidence has failed to so establish one or more of the elements, then you should find the defendant not guilty.

Next, Jury Instruction 7 defines "dangerous weapon" as "any item capable of causing death or serious bodily injury." That instruction further indicates that the jury may consider certain factors "[i]n determining whether an object is a dangerous weapon," including "the character of the instrument, object, or thing; ... the character of the wound produced, if any; ... the manner in which the instrument, object, or thing was used; ... [and] the other lawful purposes for which the instrument, object, or thing may be used."[8] Immediately thereafter, Jury Instruction 8 defines "[b]odily injury" to mean "physical pain, illness or an impairment of physical condition."

 ¶ 18 As the State concedes, the jury instructions fail to provide the statutory definition of "serious bodily injury," the type of injury a dangerous weapon must be capable of inflicting.[9] At oral argument, the State

---

**7.** *See, e.g., State v. Smith,* 909 P.2d 236, 239, 244 (Utah 1995) (noting that victim of a sexual assault suffered substantial bodily injury when she was still bleeding two hours after the assault occurred and required surgery); *State v. Bloomfield,* 2003 UT App 3, ¶¶ 4, 17–18, 63 P.3d 110 (holding that victim suffered serious bodily injury when he had tennis shoe marks and "multiple bruises, scrapes, and contusions" on his head and face and lost consciousness and remained unconscious for several hours after being kicked and stomped in the head); *State v. Boone,* 820 P.2d 930, 937 (Utah Ct.App.1991) (concluding that a reasonable jury could have found that victim suffered bodily injury when, after being hit in the mouth and face, he tasted blood in his mouth, his "lips were swollen, and there was a pinkish color around his teeth, making it evident that he had been bleeding"); *see also In re D.K.,* 2006 UT App 461, ¶¶ 9–11, 153 P.3d 736 (collecting cases addressing the various levels of injury).

**8.** Although these factors are not included in the definition of "dangerous weapon" found in section 76–1–601, which provides definitions generally applicable to the criminal code, they are included in the definition of "dangerous weapon" in section 76–10–501(6), which provides definitions applicable to the part of the criminal

code regulating weapons. *Compare* Utah Code Ann. § 76–1–601(5)(a) (LexisNexis 2012), *with id.* § 76–10–501(6) (Supp.2013). Section 76–10–501(6) defines "dangerous weapon" as "an item that in the manner of its use or intended use is capable of causing death or serious bodily injury," and then lists the factors, set forth in Jury Instruction 7, that should be considered when determining whether an "item, object, or thing not commonly known as a dangerous weapon is a dangerous weapon." *Id.* § 76–10–501(6). This court has previously characterized the section 76–10–501(6) factors as being "complementary to our interpretation of the term ['dangerous weapon'] under section 76–1–601(5)(a)," the "dangerous weapon" definition applicable to aggravated assault. *See State v. C.D.L.,* 2011 UT App 55, ¶¶ 16–19 & n. 4, 250 P.3d 69.

**9.** Although neither party raises the issue on appeal, the jury instructions also fail to provide a definition for "assault" as defined in Utah Code section 76–5–102, which is an underlying prerequisite for aggravated assault. *See* Utah Code Ann. § 76–5–103 (LexisNexis 2008) (current version at *id.* (2012)) ("A person commits aggravated assault if he commits assault as defined in Section 76–5–102....").

also conceded that trial counsel's failure to object to that omission was deficient performance. Thus, the only dispute here is whether trial counsel's deficient performance prejudiced Ekstrom. *See generally Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052; *State v. Litherland,* 2000 UT 76, ¶ 19, 12 P.3d 92.

¶ 19 "To show prejudice, a defendant must establish that 'there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.'" *State v. Walker,* 2010 UT App 157, ¶ 13, 235 P.3d 766 (quoting *Strickland v. Washington,* 466 U.S. 668, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *see also State v. Lenkart,* 2011 UT 27, ¶ 38, 262 P.3d 1. Therefore, the question here "is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland,* 466 U.S. at 695, 104 S.Ct. 2052; *see also State v. Fowers,* 2011 UT App 383, ¶ 21, 265 P.3d 832.

¶ 20 To convict Ekstrom of aggravated assault, the jury had to find that Ekstrom committed an assault—which requires actual, threatened, or attempted bodily injury—and, under the variant argued by the State, also find that Ekstrom used a weapon capable of inflicting death or serious bodily injury or used other means or force likely to produce death or serious bodily injury. *See* Utah Code Ann. § 76–5–102 (defining assault); *id.* § 76–5–103 (defining aggravated assault); *id.* § 76–1–601(5)(a) (defining dangerous weapon). However, the jury instructions defined only "bodily injury," thereby "creat[ing] the potential for confusion." *See State v. Hutchings,* 2012 UT 50, ¶¶ 19–23, 285 P.3d 1183. Where the jury was not provided with a definition for "serious bodily injury," it may have applied the bodily injury definition to both the question of whether Ekstrom had assaulted Victim and the determination of whether the pipe was a dangerous weapon or whether Ekstrom used other means or force likely to produce serious bodily injury. Because the jury was not instructed on the elements of simple assault under section 76–5–102, which is the only requirement of aggravated assault that involves "bodily injury," it is more likely that the jurors applied the sole injury definition provided to the questions of whether the pipe was a dangerous weapon and what level of force Ekstrom used. Moreover, trial counsel further confused the issue by telling the jury during closing arguments, "Serious bodily injury was defined and told [to] you by the Judge and you'll have a chance to look at that instruction as you deliberate," and "[Y]ou can determine what that is when you read that jury instruction." This inaccurate statement reinforced the likely impression that the only type of injury defined in the instructions should be used to determine whether Ekstrom was guilty of aggravated assault due to the use of a dangerous weapon or the level of force used.

¶ 21 The strength of the evidence is also relevant to the question of prejudice. "Because '[s]ome errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated trivial effect,' in determining the effect of the error, we 'consider the totality of the evidence before the ... jury.'" *State v. Hales,* 2007 UT 14, ¶ 86, 152 P.3d 321 (alteration and omission in original) (quoting *Strickland,* 466 U.S. at 695–96, 104 S.Ct. 2052). "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052.

¶ 22 In the present case, our confidence in the jury's verdict is undermined because there is a reasonable probability that, had a proper instruction on "serious bodily injury" been given, the jury would have determined that the pipe Ekstrom used to attack Victim was not a dangerous weapon capable of causing death or "serious bodily injury" and the force Ekstrom used was not likely to produce such injury. The prosecutor did not proceed on a theory that Ekstrom had caused serious bodily injury to Victim, but instead on the theory that Ekstrom had used a dangerous weapon or force likely to produce serious

bodily injury. Indeed, both parties acknowledge that Victim had not suffered serious bodily injury. Thus, to support a conviction for aggravated assault the jury had to find that the pipe Ekstrom used to strike Victim was a dangerous weapon or that Ekstrom used other means or force likely to produce death or serious bodily injury. *See* Utah Code Ann. § 76–5–103 (LexisNexis 2008) (current version at *id.* (2012)). Although sufficient, the record evidence is not overwhelming on this point.

¶ 23 First, the pipe was never found or introduced into evidence. Second, Witness was uncertain about the object Ekstrom used to strike Victim, stating on direct examination that it looked like an irrigation or sprinkler pipe, but conceding on cross-examination that he did not know for sure what the item was. Third, there is no record evidence that the pipe was made of metal.[10]

¶ 24 Had the record strongly established that Ekstrom used a metal pipe to strike Victim, we would agree with the State that trial counsel's failure to object to jury instructions that did not define "serious bodily injury" was harmless. *Cf. State v. Lambert*, 612 N.W.2d 810, 814–15 (Iowa 2000) (holding that there was not a reasonable probability of a different result even if counsel performed ineffectively in failing to object to a jury instruction stating that a metal pipe was a dangerous weapon as a matter of law). Under those circumstances, we could not conclude that there was a reasonable probability that, if instructed properly, the jury would have found that Ekstrom did not use a dangerous weapon on Victim. *Cf. McKinney v. State*, 218 Ga.App. 633, 463 S.E.2d 136, 139 (1995) (holding that there was sufficient evidence to support an aggravated assault conviction where the defendant had attacked victim with a metal pipe); *State v. Johnson*, 322 N.W.2d 358, 359 (Minn.1982) (holding that there was sufficient evidence to support a first degree assault conviction where the defendant had attacked victim with a metal pipe).

¶ 25 However, the evidence here does not strongly support a finding that the pipe was metal. As trial counsel stated at closing argument, the fact that the object broke suggests that it "wasn't a metal pipe" because a "[m]etal pipe is not going to break when you hit somebody in the back with it or over the head with it." Although we have little doubt that a properly instructed jury would find that a typical metal pipe is capable of inflicting serious bodily injury as that term has been defined by our legislature, there is a reasonable probability that the jury would reach a different outcome with respect to a pipe made of a substance weak enough to break when used to hit Victim. In some instances, plastic or PVC pipe may constitute a dangerous weapon capable of causing death or serious bodily injury. *See, e.g., Sanders v. State*, 623 So.2d 428, 430–31 (Ala.Crim.App.1993) (holding that "a broken piece of PVC pipe that had a jagged edge and a portion of a wooden broom or mop handle that had a pointed end" met the standard for a "deadly weapon," which was statutorily defined as "'anything manifestly designed, made or adapted for the purposes of inflicting death or serious physical injury'"). However, while minimally sufficient, the evidence that the pipe Ekstrom used here was capable of causing "serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or ... a substantial risk of death" is weak. *See* Utah Code Ann. § 76–1–601(11) (LexisNexis 2012) (defining "serious bodily injury"). Furthermore, the only evidence as to the force Ekstrom used is the photographs and the testimony that the pipe broke, and the fact that the pipe broke is of limited evidentiary value without further evidence as to the nature of the pipe. Although Ekstrom landed numerous blows to Victim's legs, hands, and torso before breaking the pipe over Victim's back, the record establishes, and both parties concede, that Victim's injuries were minor.

¶ 26 Considering the record as a whole, our confidence in the verdict has been undermined by the error in the jury instructions,

---

**10.** The only indication that the object used by Ekstrom was a metal pipe came from First Officer, who did not witness the attack or ever see the pipe. Thus, any indication that Victim was hit by a metal pipe was, at best, speculative.

which may have confused or misled the jury into believing that the pipe was a dangerous weapon simply because it was capable of causing "physical pain, illness or any impairment of physical condition." *See id.* § 76–1–601(3) (defining "bodily injury"). Similarly, the jury may have been confused or misled into believing Ekstrom committed aggravated assault simply because she used force likely to cause "physical pain, illness or any impairment of physical condition." *See id.* Had the jury been properly instructed on the meaning of "serious bodily injury," there is a reasonable probability that it would have found that Ekstrom's actions did not rise to the level of an aggravated assault. *See State v. Lenkart,* 2011 UT 27, ¶ 38, 262 P.3d 1. Therefore, we reverse Ekstrom's conviction and remand for a new trial.

## CONCLUSION

¶ 27 The evidence was sufficient to support Ekstrom's conviction. However, trial counsel's failure to challenge the absence of a jury instruction on the statutory definition of "serious bodily injury" undermines our confidence in the verdict because there is a reasonable probability that if the jury had been properly instructed, it would have concluded that the pipe was not a dangerous weapon capable of causing death or serious bodily injury, and that Ekstrom did not use force likely to cause death or serious bodily injury. Accordingly, we reverse Ekstrom's conviction and remand for a new trial.