2009 UT App 326

STATE of Utah, Plaintiff and Appellee,

v.

John Michael TANNER, Defendant and Appellant.

No. 20080853–CA.

Court of Appeals of Utah.

Nov. 13, 2009.

Lori J. Seppi, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Jeanne B. Inouye, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges BENCH, THORNE, and McHUGH.

## OPINION

BENCH, Judge:

¶ 1 Defendant John Michael Tanner appeals his jury conviction for one count of forcible sexual abuse, alleging that (1) as a matter of law, a school bus driver cannot be in a position of special trust under Utah Code section 76–5–404.1(4)(h) and (2) the State presented insufficient evidence to prove that, as a school bus driver, he occupied a position of special trust. We affirm.

## BACKGROUND

¶ 2 For eight years, Defendant worked as a school bus driver. At the beginning of the 2006 school year, Defendant's assignment included transportation of special education students. One of Defendant's passengers was a seventeen-year-old high school senior, M.S. M.S. experienced difficulties with learning and memory and had been in special education classes since the first grade. As a special education student, M.S. received curb-to-curb bus transportation, allowing her to be picked up and dropped off in front of her house rather than at a regular bus stop.

¶ 3 M.S. typically sat in the front row of the bus. She and Defendant would talk about the events of her day or problems she was having at school. Defendant occasionally left a soda for M.S. on her usual bus seat and also gave her several small gifts: a Grumpy hat, a Grumpy pin, a Ute hat, and a BYU hat. Defendant and M.S. would also listen to music on M.S.'s CD player together.

¶ 4 After completing his high school route, Defendant was responsible for transporting elementary school students. Defendant asked M.S. to stay on the bus after school during the elementary school route to help him with the children—essentially asking her to act as a "bus aide." After completing the elementary school route, Defendant and M.S. would return to the bus depot and Defendant would then drive M.S. home in his own vehicle. Defendant occasionally took M.S. out for fast food or soda before taking her home. M.S. told her mother (Mother) that she was staying late on the bus to help Defendant. On at least one occasion, Mother saw M.S. and Defendant sitting in Defendant's vehicle in front of her house while the two talked for as long as two hours. Defendant would also call M.S. at her house to talk.

¶ 5 From August to November, Defendant's friendship with M.S. became romantic, progressing into an increasingly physical relationship. M.S. developed a crush on Defendant and would write his name on her notebooks, decorating it with hearts and stars. Around Halloween, Defendant first kissed M.S. while the two were alone together on the bus at the bus depot. About a month later, Defendant started fondling M.S.'s breasts, then her vagina. The sexual contact between Defendant and M.S. occurred either while the two were alone together on the bus while at the bus depot or in Defendant's vehicle before he would take her home.

¶ 6 Around Thanksgiving, Defendant and M.S. were found kissing while in Defendant's vehicle, parked in a school parking lot. During a routine patrol, a police officer saw Defendant's lone vehicle in the school parking lot and decided to investigate. Upon learning that M.S. was a minor, the officer removed M.S. from the vehicle. This incident led to an investigation and Defendant's subsequent arrest.

¶ 7 Defendant was originally charged with three counts of forcible sexual abuse, *see* Utah Code Ann. § 76-5-404 (2008), which were later amended to two counts of forcible sexual abuse and one count of sexual battery, *see id.* § 76-9-702(3). To convict Defendant of forcible sexual abuse, the State had to prove that, as a school bus driver, Defendant occupied a position of special trust. *See id.* § 76-5-404(1) (defining forcible sexual abuse as certain acts of sexual touching without the victim's consent); *id.* § 76-5-406(10) (stating that sexual touching is nonconsensual if the victim is younger than eighteen years old "and at the time of the offense the [defendant] ... occupied a position of special trust in relation to the victim"); *id.* § 76-5-404.1(4)(h) (defining position of special trust as a "position occupied by a person in a position of authority, who, by reason of that position is able to exercise undue influence over the victim").

¶ 8 At trial, in order to prove that Defendant occupied a position of special trust, the State presented evidence regarding the authority of school bus drivers over the students they transport. The evidence showed that school bus drivers are responsible for the safety of their passengers. Bus drivers are required to obtain specialized licensing, receive training in defensive driving, comply with traffic laws, and conduct regular maintenance checks on the buses. They are also subject to physical examinations, drug testing, and background checks. Bus drivers are

required to receive training in CPR and first aid as well as instruction on how to deal with dangerous or emergency situations. Bus drivers are also responsible for ensuring that students are safely delivered to their destinations. If a student is "undeliverable," a driver may not merely leave the student and continue the route. Instead, the driver must take certain steps to make sure that the student is delivered to an authorized drop-off location or is taken to the bus depot to arrange other transportation.

¶ 9 The evidence further showed that school bus drivers who transport special education students have increased responsibilities for those students as well as more contact with the students and their families. Special education students are given curb-to-curb transportation, allowing them to be picked up and dropped off in front of their houses rather than at regular bus stops. To do this, the drivers not only know where those students live but are also given personal contact information for the students and their families so they can arrange usual and alternate pick-up and drop-off locations.

¶ 10 School bus drivers also have disciplinary authority over the students they transport. A bus driver may respond to an unruly or uncooperative student by referring the student to posted rules, issuing a verbal warning, imposing assigned seating, or completing a disciplinary form on the student; the driver may not, however, expel a student from or order a student off the bus. If a bus driver fills out a disciplinary form on a student, the driver is not responsible for that student's consequential discipline. Instead, the bus driver must submit the form to the school principal who then determines whether any further disciplinary action is necessary. The principal may organize a parent-teacher conference, which the driver might attend. Although an unlikely consequence, noncompliant students may "forfeit their right to ride the bus." The first rule on the disciplinary form—and the first of the rules posted on the bus—states that students "being transported are under the authority of the bus driver."

¶ 11 School bus drivers are given public relations training on how to interact with students, parents, and the public. Bus drivers are informed that they are "the first school related contact many students have each day," and that they can "set the tone" for the students' day because students with positive drivers "go to school happy." Bus drivers are instructed that they can "positively influence the behavior of the passengers" by being "courteous and positive" because "[a] happy, congenial atmosphere on the bus is conducive to good behavior." They are also taught that they can avoid behavioral problems with students by being firm, fair, and consistent. Bus drivers are informed that they are "the only contact many parents will have with school personnel" and that "[g]ood or bad impressions of the school district can be conveyed to parents and the public through the school bus driver." Further, drivers are told that "the professional reputations of drivers" and "the courtesy all children receive from bus drivers" are important to give parents "peace of mind while their children are riding the bus."

¶ 12 School bus drivers are prohibited from certain contact with students. Bus drivers are instructed to avoid touching students and are not allowed to be alone with individual students. They are not allowed to transport students in their own vehicle, nor are they allowed to give students candy or other such treats. Bus drivers should not assign students as bus aides; rather, if a driver requires help on a route, an adult bus aide will be assigned. Bus drivers are strictly prohibited from having romantic or sexual relationships with students. Indeed, in their mandatory sexual harassment training, bus drivers are informed that they are responsible for and are in a position of authority over the students they transport, making any such contact between a bus driver and a student inappropriate.

¶ 13 At trial, upon the close of the State's case, Defendant challenged whether a school bus driver is in a position of special trust and moved the court to either dismiss the two forcible sexual abuse charges or reduce them to the lesser included offense of sexual battery. The court denied Defendant's motion and submitted the issue to the jury as a question of fact. The jury convicted Defen-

dant of two counts of sexual battery and one count of forcible sexual abuse.[1] Defendant now appeals only his conviction of forcible sexual abuse, requesting that this court reduce his conviction to the lesser included offense of sexual battery.

## ISSUES AND STANDARDS OF REVIEW

¶ 14 On appeal, Defendant challenges both legally and factually whether a school bus driver is in a position of special trust. Defendant's first claim is a question of statutory interpretation, which is a question of law, reviewed for correctness. *See State v. Jeffries*, 2009 UT 57, ¶ 4, 217 P.3d 265. Defendant also claims that the State presented insufficient evidence to prove that, as a school bus driver, Defendant actually occupied a position of special trust. "Whether a [position] not specifically listed in the statute [is] ... a position of special trust ... presents a question of fact to be determined by the trier of fact...." *State v. Beason*, 2000 UT App 109, ¶ 20, 2 P.3d 459 (citation omitted). "In reviewing a jury verdict, we view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict." *State v. Rowley*, 2008 UT App 233, ¶ 15, 189 P.3d 109 (internal quotation marks omitted). "An appellate court will reverse a jury conviction for insufficient evidence only when the evidence is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *Id.* ¶ 8 (internal quotation marks omitted).

## ANALYSIS

### I. Statutory Interpretation

¶ 15 Defendant first claims that under Utah Code section 76–5–404.1(4)(h), a school bus driver cannot be in a position of special trust as a matter of law. Section 76–5–404.1(4)(h) defines a position of special trust as a

position occupied by a person in a position of authority, who, by reason of that position is able to exercise undue influence over the victim, and *includes, but is not limited to*, a youth leader or recreational leader who is an adult, adult athletic manager, adult coach, teacher, counselor, religious leader, doctor, employer, foster parent, baby-sitter, adult scout leader, natural parent, stepparent, adoptive parent, legal guardian, grandparent, aunt, uncle, or adult cohabitant of a parent.

Utah Code Ann. § 76–5–404.1(4)(h) (2008) (emphasis added). Defendant argues that section 76–5–404.1(4)(h) is ambiguous because the statutory list of positions of special trust is incomplete and should, therefore, be narrowly interpreted to exclude positions dissimilar from those specifically listed by statute. In so arguing, Defendant relies upon the *ejusdem generis* canon of construction, meaning "of the same kind or class," which instructs that "when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." *Black's Law Dictionary* 594 (9th ed. 2009).

¶ 16 We conclude that section 76–5–404.1(4)(h) is not ambiguous, and we therefore need not resort to other methods of interpretation, such as *ejusdem generis*.[2] *See State v. Rowley*, 2008 UT App 233, ¶ 11 n. 3, 189 P.3d 109 (stating that "section 76–5–404.1(4)(h) is unambiguous and has 'only one plain meaning, ... [therefore] we need not resort to other methods of interpretation' "

---

1. At trial, M.S. testified that Defendant touched her breasts over her clothing about three times, touched her breasts under her clothing once, and touched her vagina over her clothing once. The one incident of touching that occurred under M.S.'s clothing was presumably the basis for Defendant's conviction of one count of forcible sexual abuse. On the other count of forcible sexual abuse, the jury instead found Defendant guilty of the lesser included offense of sexual battery.

2. We decline to apply *ejusdem generis* to an unambiguous statute. *See Freund v. Utah Power & Light Co.*, 793 P.2d 362, 367 (Utah 1990) (declining to use *ejusdem generis* in the absence of ambiguity); *State v. Perez*, 2000 UT App 65, ¶ 12, 999 P.2d 579 ("[It] is not appropriate [to use *ejusdem generis* ] to restrict the meaning of an unambiguous term."); *State v. Fisher*, 972 P.2d 90, 98 (Utah Ct.App.1998) (stating that *"ejusdem generis* does not apply when the language of [a] statute is unambiguous").

(omission in original) (quoting *State v. Beason*, 2000 UT App 109, ¶ 22, 2 P.3d 459)); *see also State v. Ireland*, 2006 UT 17, ¶ 11, 133 P.3d 396 ("Only if we find the statutory language to be ambiguous may we turn to secondary principles of statutory construction. . . ."); *Beason*, 2000 UT App 109, ¶ 19, 2 P.3d 459 ("When examining a statute, we look first to its plain language as the best indicator of" its purpose and meaning. (internal quotation marks omitted)). The statute provides two ways by which a person may occupy a position of special trust: either by occupying a position specifically listed by statute or by fitting the definition of a position of special trust, which the statute clearly defines as a "position occupied by a person in a position of authority, who, by reason of that position is able to exercise undue influence over the victim." Utah Code Ann. § 76–5–404.1(4)(h); *see also Rowley*, 2008 UT App 233, ¶ 10, 189 P.3d 109. Contrary to Defendant's argument, the specifically listed positions are not exclusive and, therefore, in no way limit the positions that may fit the definition of a position of special trust. *See* Utah Code Ann. § 76–5–404.1(4)(h) (stating that the list "includes, but is not limited to" the listed positions); *Rowley*, 2008 UT App 233, ¶ 10, 189 P.3d 109 (deciding that a person may hold a position of special trust even if that person "does not hold any of the positions expressly noted in the statute"); *Beason*, 2000 UT App 109, ¶¶ 20–21, 24, 2 P.3d 459 (concluding that the statute includes a nonexclusive list that neither explicitly nor implicitly excludes other positions). "Thus, so long as Defendant was able to exercise undue influence over [M.S.] by reason of his position" as her school bus driver, "he could be considered a person occupying a position of special trust. . . ." *See State v. Cox*, 2007 UT App 317, ¶ 17, 169 P.3d 806, *cert. denied*, 189 P.3d 1276 (Utah 2008). We emphasize that whether a position not specifically listed in the statute is a position of special trust will generally be a fact-sensitive inquiry for the trier of fact. *See Beason*, 2000 UT App 109, ¶ 20, 2 P.3d 459. Accordingly, the district court correctly submitted to the jury, as a question of fact, the issue of whether Defendant occupied a position of special trust.

## II. Sufficiency of the Evidence

¶ 17 Defendant next claims that the State presented insufficient evidence to prove that, as a school bus driver, he occupied a position of special trust. In challenging the sufficiency of the evidence, Defendant argues that school bus drivers lack the "special authority" required to be in positions of special trust because they are merely a passive presence in students' school experience with strictly-limited, task-specific authority. Defendant places a great deal of emphasis on a bus driver's limited ability to discipline or punish students, arguing that there is no evidence that M.S. submitted to Defendant because she felt intimidated by his position or compelled to obey him.

¶ 18 The controlling statute, Utah Code section 76–5–404.1(4)(h), provides that a "position of special trust [is a] position occupied by a person in a position of authority, who, by reason of that position is able to exercise undue influence over the victim." Utah Code Ann. § 76–5–404.1(4)(h). The statute does not require "special authority" or a certain type or amount of authority, evidenced by the diversity of the specifically listed positions. Nor does the statute require intimidation or coercion, instead requiring undue influence. By its plain language, section 76–5–404.1(4)(h) requires that the defendant occupy a "position of authority" and be able to use "that position . . . to exercise undue influence over the victim." *Id.* Application of the statute must focus on how a particular position is used to exercise undue influence— a very fact-sensitive analysis. Accordingly, to prove that Defendant occupied a position of special trust, the State was required to show both that (1) as a bus driver, Defendant occupied a position of authority over M.S. and (2) because of his position, Defendant was able to exercise undue influence over M.S.

¶ 19 The evidence shows that Defendant occupied a position of authority over M.S. As her school bus driver, Defendant was responsible for M.S. while transporting her on the bus, and he was granted authority to that end. Defendant was responsible for M.S.'s safety: her safe transport in compliance with traffic laws on well-maintained equipment,

safe delivery, and her safety in medical emergencies and other potentially dangerous situations that may arise on the bus. Defendant had the ability to discipline students in order to further ensure their safety and the safety of others while on the bus. Defendant was further instructed on how to "positively influence the behavior of [his] passengers" and convey a good impression to parents so as to give them "peace of mind while their children are riding the bus." Due to the nature of a special education route, Defendant had additional responsibility for his passengers, requiring him to ensure that M.S. was delivered directly to her house or another designated location. He was therefore entrusted with M.S.'s personal information, such as her home address and telephone number. Further, the policies that prohibit romantic relationships and sexual contact between bus drivers and students recognize that such contact is inappropriate because of the bus drivers' position of authority over the students. Indeed, students are informed by posted rules that they "are under the authority of the bus driver." [3]

¶ 20 The evidence here demonstrates that Defendant used his position as M.S.'s school bus driver to exercise undue influence over her. During the times Defendant was responsible for M.S., he talked to her about her problems at school and singled her out for small gifts, establishing friendship and trust. Defendant then increased the frequency of the time he and M.S. spent together under the guise of giving M.S. responsibility as a bus aide. Defendant would also call M.S. at her house to talk, using the personal information he was entrusted with as her bus driver. Defendant then escalated the intimacy of the time he and M.S. spent together by taking her to the bus depot and driving her home in his own vehicle, causing him to be alone with M.S. Defendant took advantage of these intimate settings he had created by initiating a physical relationship with M.S., beginning with kissing and escalating into sexual touching. Ultimately, it was possible for Defendant to engage in this physical relationship with M.S. due to the undue influence he was able to exercise over her because of his position as her bus driver. And "so long as Defendant was able to exercise undue influence over [M.S.] by reason of his position" as her bus driver, "he could be considered a person occupying a position of special trust." *See Cox*, 2007 UT App 317, ¶ 17, 169 P.3d 806.

¶ 21 Accordingly, the jury was not unreasonable in concluding that Defendant occupied a position of special trust. There is sufficient evidence in the record to show that, as her school bus driver, Defendant occupied a position of authority over M.S. and was able to use that position to exercise undue influence over her.[4]

## CONCLUSION

¶ 22 We conclude that Utah Code section 76–5–404.1(4)(h) is not ambiguous because it clearly defines a "position of special trust" as a "position occupied by a person in a position of authority, who, by reason of that position is able to exercise undue influence over the victim." Utah Code Ann. § 76–5–404.1(4)(h) (2008). Because the statutory list of positions of special trust is not exclusive, other unlisted positions may fit the definition of a position of special trust. Whether a position not specifically listed by the statute is a position of special trust is a fact-sensitive inquiry, which must generally be determined

---

3. Defendant argues that his position as M.S.'s bus driver did not authorize him to have the sort of contact he had with M.S.—such as giving her soda and gifts, making her a bus aide, being alone with her on the bus, or driving her home in his own vehicle—which contact eventually led to their illegal physical relationship. This argument implies that under section 76–5–404.1(4)(h), a person must directly use his or her legitimate authority granted by a position to exercise undue influence. Adoption of this argument would, however, create an absurd result because any adult who is able to enter into an inappropriate or illegal relationship with a child

due to their position in relation to that child is likely exceeding or abusing the legitimate authority granted by that position.

4. Our disposition of this case should not be read as a determination that all school bus drivers—or even special education bus drivers—are presumptively in positions of special trust. "Rather, our decision today is limited to the facts of this case, which we hold were sufficient to support the jury verdict." *See State v. Rowley*, 2008 UT App 233, ¶ 16 n. 7, 189 P.3d 109.

by the trier of fact, emphasizing how a particular position is used to exercise undue influence. We further conclude that the evidence here is sufficient to show that Defendant occupied a position of authority over M.S. and that he used his position to exercise undue influence over her. Therefore, the jury reasonably concluded that Defendant occupied a position of special trust in finding him guilty of forcible sexual abuse.

¶ 23 Accordingly, we affirm.

¶ 24 WE CONCUR: WILLIAM A. THORNE JR. and CAROLYN B. McHUGH, Judges.