2015 UT App 129

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
MATTHEW WALLACE PETERSON,
Defendant and Appellant.

Memorandum Decision
No. 20130874-CA
Filed May 21, 2015

Third District Court, Salt Lake Department
The Honorable Ann Boyden
No. 121908790

Joanna E. Landau and Lisa J. Remal, Attorneys
for Appellant

Sean D. Reyes and John J. Nielsen, Attorneys
for Appellee

JUDGE JAMES Z. DAVIS authored this Memorandum Decision, in
which JUDGES J. FREDERIC VOROS JR. and JOHN A. PEARCE
concurred.

DAVIS, Judge:

¶1     Matthew Wallace Peterson appeals his convictions of two
counts of aggravated sexual abuse of a child, first degree
felonies, *see* Utah Code Ann. § 76-5-404.1(4)–(5) (LexisNexis
2012); one count of rape of a child, a first degree felony, *see id.*
§ 76-5-402.1 (Supp. 2014); one count of object rape of a child, a
first degree felony, *see id.* § 76-5-402.3; and one count of
tampering with a witness, a third degree felony, *see id.* § 76-8-
508(1) (2012). We affirm.

¶2     Peterson argues that the evidence presented at trial was
insufficient to support his conviction on any of the five charges.

When reviewing a conviction for sufficiency of the evidence, "we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury" and "will reverse the jury's conviction only if the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted."[1] *State v. Hales*, 2007 UT 14, ¶ 36, 152 P.3d 321 (citations and internal quotation marks omitted).

## I. Aggravated Sexual Abuse Charges

¶3      Peterson first asserts that the State failed to present sufficient evidence for the jury to find either that he held a position of special trust with respect to the child victim (Child) or that he penetrated her vagina when he touched her with his finger. In order to convict Peterson of aggravated sexual abuse of a child, the jury needed to find at least one of these aggravating factors beyond a reasonable doubt. *See* Utah Code Ann. § 76-5-404.1(4). We agree with the State that the evidence was sufficient for the jury to have found both factors.

A.      Penetration

¶4      The penetration factor required the jury to find that Peterson "caused the penetration, however slight, of the genital

---

1. The parties dispute whether Peterson adequately preserved his arguments for appeal. However, as it does not alter the outcome of our decision, we assume for purposes of this opinion that they were preserved. *See generally Patterson v. Patterson*, 2011 UT 68, ¶ 13, 266 P.3d 828 ("Our preservation requirement is self-imposed and is therefore one of prudence rather than jurisdiction. Consequently, we exercise wide discretion when deciding whether to entertain or reject matters that are first raised on appeal.").

. . . opening of the child by any part or parts of the human body other than the genitals or mouth." *Id.* § 76-5-404.1(4)(j). At trial, Child testified that on two separate occasions, Peterson touched her "private" with his finger underneath her underwear. She explained that by "private," she meant her "front" private used for "[g]oing to the bathroom" and distinguished it from her "bottom." She also specifically testified that when Peterson touched her private with his finger, it went "in" her private. Peterson argues that Child's general reference to her private, as opposed to her vagina, was insufficient to establish penetration. He also points to the testimony of the witness who performed a physical examination on Child that children generally do not know how to express the difference between touching and penetration of their genitals. He asserts that this makes Child's testimony that Peterson put his finger "in" her private insufficient to establish the penetration aggravator. We disagree.

¶5 If believed, Child's testimony establishes, at a minimum, that Peterson put his finger between the outer folds of Child's labia, which "is sufficient to constitute 'penetration.'" *See State v. Simmons*, 759 P.2d 1152, 1154 (Utah 1988). In sexual abuse cases, child witnesses frequently refer to genitalia as "privates"; a child's failure to use an anatomical reference does not make her testimony insufficient, so long as the child's meaning is clear. *Cf., e.g., State v. Taylor*, 2005 UT 40, ¶ 3, 116 P.3d 360 (indicating that the child witness had testified that the defendant told her "to 'suck on his private'" and described it "as tasting like urine"); *State v. Pritchett*, 2003 UT 24, ¶ 16, 69 P.3d 1278 (indicating that the child witness had testified that the defendant put his index and middle fingers into her "private area" and that he "sticked [sic] his privates inside her private" (internal quotation marks omitted)). Here, Child's clarification that she was referring to her "front" private, which she uses for "[g]oing to the bathroom" sufficiently indicated that she was referring to her vaginal opening. And unlike in other cases where evidence of penetration has been held to be insufficient, Child specifically testified that Peterson's finger went "in" her "private." *Cf.*

*Simmons*, 759 P.2d at 1154 (holding that the evidence of penetration was insufficient where the victim "testified that [the] defendant put the tip of his penis 'on' her labia"); *State v. Pullman*, 2013 UT App 168, ¶ 13, 306 P.3d 827 (holding that the evidence of penetration was insufficient where the victim testified that the defendant "tried" to put his penis in her "butt" but that she "pushed him away before it" went inside). Whether Child had a complete understanding of what it meant for something to be "in" her private was a credibility question for the jury. But her testimony that Peterson put his finger in her private, if believed, was sufficient for the jury to find penetration.

B.      Position of Special Trust

¶6      The evidence was also sufficient for the jury to find that Peterson held a position of special trust with respect to Child. A position of special trust is one that puts the defendant in a "position of authority" and gives the defendant "the ability to 'exercise undue influence' over" a child. *State v. Watkins*, 2013 UT 28, ¶ 39, 309 P.3d 209 (quoting Utah Code Ann. § 76-5-404.1(4)(h)). Examples of positions of authority are enumerated in the aggravated sexual abuse of a child statute and include babysitters and adult cohabitants of the child's parent.[2] *See* Utah

---

2. In *State v. Watkins*, 2013 UT 28, 309 P.3d 209, the Utah Supreme Court interpreted the enumerated list of individuals in the statute as identifying individuals who hold positions of authority, not necessarily positions of special trust. *Id.* ¶¶ 22–38. Thus, even if the State proves that a defendant occupied a specifically enumerated position, it must still prove that the defendant "is able to exercise undue influence over the victim" by reason of that position. *Id.* ¶ 20 (citation and internal quotation marks omitted). The legislature recently modified the definition of "position of special trust" by separating those holding a "position of authority" that enables them "to exercise

(continued…)

Code Ann. § 76-5-404.1(4) (LexisNexis 2012). Child testified that Peterson lived with her family and sometimes looked after her when her mother was at work or visiting Child's great-grandmother in the hospital. She testified that Peterson was responsible for feeding and taking care of her when her mother was away and that she was required to "pay attention . . . and listen to what he said." Child's mother testified that Peterson lived with her and that he regularly picked Child up from school, fed her, and helped her with her homework. Child's mother also testified that Peterson frequently tended Child while the mother worked, visited the great-grandmother, and attended social events. Peterson told the investigating detective that "he was always taking care of" Child. This evidence supports a finding that Peterson was both a babysitter and an adult cohabitant of Child's mother and therefore held a position of authority. It also supports a finding that he was able to exert undue influence over Child because she was frequently left alone with him and he was given charge over her such that she believed she was expected to "listen to what he said." Accordingly, the evidence was sufficient to support a determination that Peterson occupied a position of special trust with respect to Child.

## II. Rape of a Child and Object Rape of a Child Charges

¶7    Peterson next asserts that the State failed to present sufficient evidence to support the rape of a child and object rape of a child charges. First, he challenges the rape of a child charge

---

(…continued)
undue influence over the child" from other enumerated individuals, who are expressly defined as occupying a position of special trust. *See* Utah Code Ann. § 76-5-404.1(1)(c) (LexisNexis Supp. 2014). However, because Peterson was convicted under the previous version of the statute, *Watkins* is controlling here.

on the basis that Child's testimony was insufficient to support an inference that he touched Child's vagina with his penis. Although Child's head was covered with a pillow at the time of the events relating to the rape charge so that she did not actually see Peterson's penis, Child's testimony was sufficient for the jury to have drawn a reasonable inference that he used his penis to penetrate her vagina. Child testified that she heard a zipper being unzipped and she felt something that felt "like skin" touch her "private." She testified that it went "in" her "private" and that it was uncomfortable for her. She testified that although she did not see it, she believed it was Peterson's "private" because she heard the zipper and "[i]t didn't feel like his finger and it didn't feel like the device" that he had previously used on her, *see infra* ¶ 8. Reviewing "all inferences which may reasonably be drawn from [the evidence] in the light most favorable to the verdict of the jury," we cannot conclude that this evidence was so "inconclusive or inherently improbable" that the jury could not have convicted Peterson of rape of a child. *See State v. Hales*, 2007 UT 14, ¶ 36, 152 P.3d 321 (citations and internal quotation marks omitted).

¶8     Peterson also argues that the evidence was insufficient to support a conviction for object rape of a child because DNA evidence found on the vibrating device "does not lend itself to the inference that Peterson used the device as [Child] described." On the contrary, the fact that DNA matching Child was found on the tip of the vibrator corroborated her testimony that Peterson put the "small end" of the vibrator into her "private." Analysis excluded Peterson—but not Child or her mother—as the source of DNA on the vibrator control. This result could be viewed either as exculpatory or as consistent with Child's testimony that Peterson washed off the vibrator after he used it on her. In any event, it was the jury's prerogative to weigh Child's testimony in light of the DNA evidence, and Child's testimony, if believed, was sufficient to support a conviction for object rape of a child. *See State v. Fedorowicz*, 2002 UT 67, ¶ 40, 52 P.3d 1194 ("When we examine a challenge to the sufficiency of

the evidence supporting a jury verdict, . . . [we] assume that the jury believed the evidence that supports the verdict." (citation omitted)); *State v. Workman*, 852 P.2d 981, 984 (Utah 1993) ("When the evidence presented is conflicting or disputed, the jury serves as the exclusive judge of both the credibility of witnesses and the weight to be given particular evidence.").

III. Tampering with a Witness Charge

¶9     Finally, Peterson argues that the jury could not convict him of tampering with a witness in the absence of evidence that he "believ[ed] that an official proceeding or investigation [was] pending or about to be instituted" at the time he allegedly threatened Child. *See* Utah Code Ann. § 76-8-508(1) (LexisNexis 2012).

¶10    Peterson relies on *State v. Bradley*, 752 P.2d 874 (Utah 1985) (per curiam), for the proposition that the State had to prove that Peterson believed an official investigation was pending or underway at the time he threatened Child. *See id.* at 876–77. However, *Bradley* relied on an earlier version of the statute, *see id.* at 875–77, which permitted a person to be found guilty of tampering with a witness only if the person acted "[b]elieving that an official proceeding or investigation is pending or about to be instituted," Utah Code Ann. § 76-8-508(1) (1978). In 2004, the legislature added "or with the intent to prevent an official proceeding or investigation" to the statute. Act of May 3, 2004, ch. 140, § 3, 2004 Utah Laws 592, 594–95. Thus, under the current version of the statute, it was unnecessary for the State to prove that Peterson believed an official investigation was pending or about to be instituted if it could prove that Peterson acted with the intent to prevent an investigation in the future.

¶11    Peterson also relies on our more recent decision in *State v. Jones*, 2014 UT App 142, 330 P.3d 97, *cert. granted*, 341 P.3d 253 (Utah Nov. 25, 2014). While the *Jones* court cited *Bradley* in

support of its conclusion that the State had failed to present sufficient evidence of witness tampering, it ultimately determined not only that there was no evidence that the defendant "believed that an official investigation . . . was underway," but that there was no evidence that he believed such an investigation "*would be initiated in the future*." *Id.* ¶ 31 (emphasis added). Thus, in *Jones*, the State failed to present evidence that the defendant acted "with the intent to prevent an official proceeding or investigation." Utah Code Ann. § 76-8-508(1) (LexisNexis 2012).

¶12 Conversely, in this case, Child's testimony was sufficient to support a determination that Peterson acted with the intent to prevent an official proceeding or investigation. Child testified that on one occasion, Peterson chased her into her room and pulled her hair. She told him that she was going to tell her mother that he had touched her inappropriately. He replied, "[I]f you tell your mom I'm going to kill her." Given that Peterson's threat was in direct response to Child's threat to disclose his illegal actions, the evidence was sufficient for the jury to infer that Peterson threatened Child with the intent to prevent an official proceeding or investigation and was therefore sufficient to support Peterson's conviction for witness tampering.

## IV. Conclusion

¶13 For these reasons, we conclude that the evidence was sufficient to support Peterson's convictions on all five charges. Accordingly, we affirm.

_____