2016 UT App 15

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DAVID ALLEN GIBSON,
Appellant.

Opinion
No. 20140283-CA
Filed January 22, 2016

First District Court, Brigham City Department
The Honorable Ben H. Hadfield
No. 131100018

Michael P. Studebaker, Attorney for Appellant

Sean D. Reyes and Karen A. Klucznik, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and KATE A. TOOMEY concurred.

ROTH, Judge:

¶1     David Allen Gibson appeals from a single conviction for aggravated sexual abuse of a child, a first degree felony.[1] We affirm.

¶2     Gibson was charged with two counts of aggravated sexual abuse of a child based on events that transpired on the night of January 26, 2013. On that night, the victim (Child) and her stepsister visited Gibson's daughter at his home. Both girls ultimately asked to stay overnight, and Gibson gave them

---

1. Gibson pled guilty to one count of possession of a dangerous weapon by a restricted person, a third degree felony. He does not challenge that conviction on appeal.

permission to do so. Child alleged that during the night, Gibson inappropriately touched her twice, once when he sat on her back and put his hand "down the back of [her] pants," touching her buttocks, and later, when he brought her a blanket, covered her with it, and proceeded to put his hand inside of her pants and rub her vagina for three to four minutes. That same night, Child returned to her parents and informed them of what had occurred. The police were called, and Gibson was subsequently arrested and charged.

¶3     Gibson proceeded to trial on two counts of aggravated sexual abuse of a child. At the conclusion of the two-day trial, the jury returned a verdict of guilty on one count and acquitted him on the other.

¶4     On appeal, Gibson makes several arguments related to motions and objections made by his counsel during the proceedings. Gibson first argues that there was insufficient evidence to support a conclusion that the sexual abuse was aggravated and, consequently, that the trial court erred in denying his motion for a partial directed verdict reducing the charges from first degree to second degree felonies. He next argues that the trial court committed reversible error when it allowed a witness who he alleges had attended the preliminary hearing to testify at trial. He also contends that, in convicting him of one count and not the other, the jury returned inconsistent verdicts that required the trial court to grant him a new trial. He finally argues that the trial court erred by not giving a jury instruction on sexual battery as a lesser included offense.

ANALYSIS

I. Partial Directed Verdict

¶5     Gibson was charged with first degree felony aggravated sexual abuse of a child based on the State's contention that he held a position of special trust with respect to Child at the time

of the offenses. He argues that the trial court committed reversible error by "holding [that] [he] was a person for aggravating factors within the definitions of the Aggravated Sexual Abuse statutory language" and that the trial court should have granted his motion for a partial directed verdict, reducing the charges to second degree felonies, because the evidence was insufficient to prove aggravating factors. In particular, Gibson contends that because "'a parent of the alleged victim's friend' is not specifically listed by [the applicable] statute, . . . he does not fit into the definition of a position of special trust." When reviewing the denial of a directed verdict motion, "[w]e will uphold the trial court's decision if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183 (alteration in original) (citation and internal quotation marks omitted). The State contends that Gibson failed to marshal most of the evidence that supported the trial court's ruling and, consequently, he has failed to carry his burden to show that the trial court committed reversible error. We agree.

¶6     Under Utah law, "[a] person commits sexual abuse of a child if . . . the actor touches the anus, buttocks, or genitalia of any child, . . . or otherwise takes indecent liberties with a child, . . . with the intent to arouse or gratify the sexual desire of any person." Utah Code Ann. § 76-5-404.1(2) (LexisNexis 2012).[2] Sexual abuse of a child is a second degree felony. *Id.* § 76-5-404.1(3). The crime becomes a first degree felony if the circumstances include at least one aggravating factor. *Id.* § 76-5-

---

2. Subsequent to the events underlying this case, the legislature substantively amended the portion of this statute related to a position of special trust. Utah Code Ann. § 76-5-404.1(1)(c), (4)(h) (LexisNexis Supp. 2014). We cite the version of the statute in effect at the time of the conduct giving rise to Gibson's criminal charges.

404.1(4), (5). The aggravating factor alleged by the State in this case is that Gibson "occupied a position of special trust in relation to the victim." *Id.* § 76-5-404.1(4)(h).

¶7     The statute in effect at the time Gibson committed the charged acts defined position of special trust as the "position occupied by a person in a position of authority, who, by reason of that position is able to exercise undue influence over the victim." *Id.* The statute also included a non-exhaustive list of people presumed to "occupy 'position[s] of authority'" vis-à-vis a child, such as "baby-sitter" or "stepparent." *Id.*; *see also State v. Watkins*, 2013 UT 28, ¶ 37, 309 P.3d 209 (stating that the "enumerated positions refer to those who occupy 'position[s] of authority'" (quoting Utah Code Ann. § 76-5-404.1(4)(h))). Our supreme court has interpreted the applicable version of the statute to mean that even if the defendant held a "position of authority" specifically listed in the statute, the State still must show "that the position gave the defendant the ability to exercise undue influence over the victim." *Watkins*, 2013 UT 28, ¶ 39 (internal quotation marks omitted).[3] But Gibson has not

---

3. As the State points out in its briefing, prior to *State v. Watkins*, 2013 UT 28, 309 P.3d 209, our courts had interpreted this statute to mean that if a person occupied one of the specifically enumerated positions of authority, that person occupied "a position of special trust" as a matter of law. *See, e.g., State v. Tanner*, 2009 UT App 326, ¶ 16, 221 P.3d 901 (stating that Utah Code section 76-5-404.1(4)(h) "provides two ways by which a person may occupy a position of special trust: either by occupying a position specifically listed by statute or by fitting the definition of a position of special trust"). *Watkins*, however, held that occupying one of the enumerated positions alone was not sufficient; rather, the State must also show that the defendant actually used that position of authority to exercise undue influence over the victim. *See Watkins*, 2013 UT 28, ¶ 39. In apparent response, the legislature amended the definition of position of special trust in 2014 to provide that occupying one of

(continued…)

identified any case that has held that the enumerated positions of authority were exclusive, as he seems to argue; rather, the statutory list only describes particular relationships that "suffice[] to establish . . . that the defendant occupied a position of authority." *Id.* (internal quotation marks omitted). The fact that Gibson did not occupy a position on the list did not foreclose the State's ability to prove the aggravating factor; it merely meant that the prosecution was required to show that he was in an actual position of authority under the particular circumstances rather than that he occupied a specified status. *See* Utah Code Ann. § 76-5-404.1(4)(h).

¶8      With respect to Gibson's insufficient evidence claim, we have stated that determining whether a person occupies a position of special trust is "generally . . . a fact-sensitive inquiry for the trier of fact" because "[a]pplication of the statute must focus on how a particular position is used to exercise undue influence—a very fact-sensitive analysis." *State v. Tanner*, 2009 UT App 326, ¶¶ 16, 18, 221 P.3d 901. As a consequence, the jury's determination on this point is entitled to considerable deference and will not be overturned unless it is clearly erroneous. *See Manzanares v. Byington (In re Adoption of Baby B.)*, 2012 UT 35, ¶ 40, 308 P.3d 382 (explaining that "[f]indings of fact are entitled to the most deference" and that "[s]uch findings are accordingly

---

(…continued)
the enumerated authority positions suffices as a matter of law to establish the required "position of special trust." *Compare* Utah Code Ann. § 76-5-404.1(4)(h) (LexisNexis 2012), *with id.* § 76-5-404.1(1)(c), (4)(h) (Supp. 2014); *see also State v. Peterson*, 2015 UT App 129, ¶ 6 & n.2, 351 P.3d 812 (acknowledging that the legislature had amended the statute to make clear that the "position of special trust" aggravating factor is met by showing either that the person falls within one of the specific categories enumerated in the statute or is within the broader definition of a person in authority who exercises undue influence over the child).

overturned only when clearly erroneous" (citation and internal quotation marks omitted)).

¶9 Gibson asserts that the circumstances here are significantly less compelling than in other cases where we have determined that defendants occupy positions of special trust.[4] But he does not attempt to analyze the facts in this case in light of the deferential standard of review. Rather, Gibson simply states that he was not in a position of special trust, because unlike the defendant in *State v. Rowley*, 2008 UT App 233, 189 P.3d 109, Gibson "did not babysit or supervise" and was not "expected to supervise" Child, "there [were] no instances where [he] exercised authority" over Child, and "there [were] no indications of past sleep-overs." He also asserts that unlike in *Tanner*, 2009 UT App 326, "the children were never instructed that they were under [his] authority" and he was "likely not able to discipline [Child]." According to Gibson, he was simply "in his own home, working and tending to chores" when he "was visited by [Child] without any agreement on his own part."

---

4. *See, e.g.*, *Tanner*, 2009 UT App 326, ¶ 21 (determining that "the jury was not unreasonable in concluding that [a bus driver] occupied a position of special trust" in relation to one of the female special needs students he drove to and from school, because there was sufficient evidence to prove that the bus driver occupied a position of authority over the victim and, because of that position, was "able to exercise undue influence over her"); *State v. Rowley*, 2008 UT App 233, ¶¶ 13, 15, 189 P.3d 109 (determining that the father of the victim's best friend held a position of special trust in relation to the victim in that case because, notwithstanding conflicting evidence, "it [was] reasonable to conclude that [the father] was an authority figure to an eleven-year-old girl who frequently spent the night at his home and over whom he exercised some amount of supervision").

¶10 Whatever merits Gibson's assertions may have, however, are obscured by his failure to adequately identify and engage with the evidence supporting the trial court's decision. *See State v. Nielsen*, 2014 UT 10, ¶¶ 41–42, 326 P.3d 645 (repudiating the "default notion of marshaling" but reiterating that "a party challenging . . . sufficiency of the evidence to support a verdict will almost certainly fail to carry its burden of persuasion on appeal if it fails to marshal"); *State v. Mitchell*, 2013 UT App 289, ¶ 31, 318 P.3d 238 ("[A]n argument that does not fully acknowledge the evidence supporting a finding of fact has little chance, as a matter of logic, of demonstrating that the finding lacked adequate factual support." (citation and internal quotation marks omitted)); *see also* Utah R. App. P. 24(a)(9) ("A party challenging a fact finding must first marshal all record evidence that supports the challenged finding."). In this regard, Gibson fails to identify or even acknowledge the evidence presented that supported the State's case that he occupied a position of special trust. For example, the State presented evidence that Gibson himself, not his wife, gave permission to Child and her stepsister to stay the night at his house, that Gibson asserted himself by covering Child and her stepsister with blankets even when Child told him that she was not cold, and that Gibson gave the children directions, such as instructing them to be quiet later in the night, much as a baby-sitter or parent would. The State also presented evidence suggesting Child's trust in Gibson; when Gibson first touched her—on the buttocks under her clothing—she perceived it as unintentional, simply a mistake. Further, both his authority and influence were arguably apparent in the evidence that Child made no overt objection when Gibson later rubbed her genitals, even though her stepsister and friend were both in the room at the time, and then verbally agreed to Gibson's demand that she not tell anyone that he had touched her; Child even gave Gibson a bedtime hug at his request after both incidents had occurred.

¶11 Gibson does not address any of this evidence, even though all of it was before the trial court at the time of his motion for a partial directed verdict. By neglecting to do so,

Gibson has failed to carry his burden of convincing us that there was not "some evidence" to support the court's decision to deny Gibson's motion for a partial directed verdict and to send the case to the jury to resolve the aggravating factor. *See Nielsen*, 2014 UT 10, ¶ 40 ("[A] party who fails to identify and deal with supportive evidence will never persuade an appellate court to reverse under the deferential standard of review that applies to [sufficiency challenges]."); *see also State v. Montoya*, 2004 UT 5, ¶ 33, 84 P.3d 1183 ("[I]f there is any evidence, however slight or circumstantial, which tends to show guilt of the crime charged or any of its degrees, it is the trial court's duty to submit the case to the jury." (alteration in original) (citation and internal quotation marks omitted)). Thus, without deciding whether the evidence is actually sufficient to sustain the jury's verdict or to establish that Gibson occupied a position of special trust as a matter of law, we are not persuaded that the trial court committed reversible error by denying Gibson's motion for a partial directed verdict.

## II. Witness Exclusion

¶12 Gibson next argues that the trial court committed reversible error by allowing a witness to testify at trial who had attended, but not been excluded from, the preliminary hearing. We review a trial court's determinations regarding violations of the witness exclusion rule for abuse of discretion. *See State v. Billsie*, 2006 UT 13, ¶ 6, 131 P.3d 239.

¶13 Rule 615 of the Utah Rules of Evidence provides that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Utah R. Evid. 615. Our supreme court has stated that this rule is "directed toward preventing witnesses from changing their testimony based on other evidence adduced at trial." *Billsie*, 2006 UT 13, ¶ 10 (citation and internal quotation marks omitted). Nevertheless, a trial court retains considerable "discretion to decide whether a defendant will be prejudiced by permitting a witness to testify in the face of a violation of the [witness exclusion] rule." *State v. Carlson*, 635 P.2d 72, 74 (Utah 1981); *see*

*also Billsie*, 2006 UT 13, ¶ 8 (stating that a trial judge "has broad latitude to control and manage the proceedings and preserve the integrity of the trial process" (citation and internal quotation marks omitted)); *id.* (explaining that "[t]he trial court is afforded considerable latitude" when determining whether a person fits within an exemption of rule 615 and, "once the trial court makes that determination, that witness must be allowed to remain in the courtroom"); *State v. Toki*, 2011 UT App 293, ¶ 40, 263 P.3d 481 ("A trial court has broad discretion to respond to courtroom events and to control the proceedings before it."). Thus, in order to show that a trial court abused its discretion in allowing a witness to testify despite a violation of the exclusionary rule, the defendant carries "the onus of showing" prejudice, *Carlson*, 635 P.2d at 74, and, in particular, must demonstrate that the witness "changed [her] testimony" in some material way because of what she heard, *State v. McGrath*, 749 P.2d 631, 634 (Utah 1988). *See also Billsie*, 2006 UT 13, ¶ 6 (stating that a trial court's decision to exempt a witness will be affirmed if "the challenged practice is not inherently prejudicial, or the defendant fails to show actual prejudice" (citation and internal quotation marks omitted)). Gibson has not met this burden.

¶14    As the State notes, Gibson has not persuasively argued that a violation of the witness exclusion rule even occurred in this case. At the preliminary hearing seven months before trial, defense counsel moved to exclude all persons who were expected to testify as witnesses at trial. The State responded that it had not yet identified its witnesses for trial, and the court declined to make a ruling on the issue at that time. As a result, the witness was permitted to attend the preliminary hearing. When defense counsel later moved to bar the witness from testifying at trial based on her presence during the preliminary hearing, the trial court expressed doubt that a violation of rule 615 had actually occurred, a doubt that seems at least plausible based on the available information. Gibson fails to address that question at all, simply concluding without analysis that allowing the witness to testify at trial violated the exclusionary rule.

¶15　But even assuming for purposes of appeal that there was a violation of the rule, Gibson has not shown that the witness changed her testimony as a result of what she heard at the preliminary hearing, much less that he was prejudiced by it. In fact, Gibson fails to even identify the witness or describe the subject matter of her testimony. Rather, he conclusively states that because this unnamed witness was permitted to hear preliminary hearing testimony, "that alone is a clear indication of a bolstering of the [witness's] testimony" and that Gibson was thereby "unduly prejudiced." Gibson cannot meet his burden of persuasion by "merely alleg[ing] prejudice without pointing to inconsistencies in the record or other evidence which would show wherein he has been prejudiced." *Carlson*, 635 P.2d at 74. Thus, because Gibson has "fail[ed] to show actual prejudice," *Billsie*, 2006 UT 13, ¶ 6 (citation and internal quotation marks omitted), he cannot persuade us that the trial court abused its discretion by allowing the witness to testify.

### III. Inconsistent Verdicts

¶16　Gibson next argues that the trial court erred by not granting a new trial based on what he claims to be inconsistent verdicts. We review a trial court's denial of a motion for a new trial for abuse of discretion, *see State v. Martin*, 2002 UT 34, ¶ 45, 44 P.3d 805, and we "will not overturn a jury's verdict of criminal conviction unless reasonable minds could not rationally have arrived at a verdict of guilty beyond a reasonable doubt based on the law and on the evidence presented," *State v. Hancock*, 874 P.2d 132, 134 (Utah Ct. App. 1994) (citation and internal quotation marks omitted). *See also State v. Stewart*, 729 P.2d 610, 611 (Utah 1986) (per curiam) (stating that the question on review, even as to inconsistent verdicts, "is simply whether there is sufficient evidence to support the guilty verdicts"). The State argues that Gibson has failed to show that the trial court erred because Gibson does not cite governing law or show that the evidence was insufficient to support Gibson's conviction. We agree.

¶17    Gibson asserts that the verdicts were "glaringly" inconsistent because even though the "events happened two times during the visit[]," the circumstances were limited to an "overnight timeframe." He then concludes without analysis or citation to relevant law that the mere fact that the jury returned verdicts of guilty on one count and not guilty on the other demonstrated that "it was clear that the jury was confused and did not understand the essential elements of the state's case." Thus, as the State puts it, Gibson "appears to merely argue that because the counts were related in time and the jury did not convict him on the first count . . . it must not have believed [Child's] testimony concerning the second count." But Gibson's conclusion is not self-evident; for example, the jury might have concluded, as did Child initially, that the touching of her buttocks was accidental. Gibson has not developed his inconsistency assertion much beyond simply stating it.

¶18    And, even if the verdicts were inconsistent with each other, Gibson must demonstrate an "additional error beyond a showing of inconsistency," *State v. LoPrinzi*, 2014 UT App 256, ¶ 30, 338 P.3d 253 (citation and internal quotation marks omitted), *cert. granted*, 347 P.3d 405 (Utah 2015), because "the inconsistency of verdicts is not, by itself, sufficient ground to set the verdicts aside," *Hancock*, 874 P.2d at 134 (citation and internal quotation marks omitted). *See also LoPrinzi*, 2014 UT App 256, ¶ 31 (stating that even "if the evidence as to both counts was precisely the same," "'it would make no difference to our review . . . because [c]learly, the jury determined, for its own presumably valid reasons, that the evidence only supported one conviction'" (alteration in original) (quoting *State v. Sjoberg*, 2005 UT App 81U, para. 4)). Rather, to prevail on appeal, Gibson is required to demonstrate that the guilty verdict the jury returned was unsupported by the evidence presented at trial. *See Stewart*, 729 P.2d at 611. And Gibson does not allege that the evidence was insufficient to support his conviction, nor does he identify any other error related to the verdicts that would warrant granting a new trial.

¶19    Because Gibson cannot carry his burden of persuasion by simply pointing out potential inconsistency in the verdicts, we cannot say that it was unreasonable for the jury—whether through the jury's assessment of the evidence and the credibility of the witnesses or "through mistake, compromise, or lenity"—to return the verdicts that it did. *See LoPrinzi*, 2014 UT App 256, ¶¶ 30–31. We are therefore not persuaded that the trial court abused its discretion by denying Gibson's motion for a new trial on the basis of inconsistent verdicts.

### IV. Sexual Battery Jury Instruction

¶20    Finally, Gibson argues that the trial court erred by not giving a lesser included jury instruction for sexual battery, contending that he was "entitled to instruct the jury on [this] theory of the case" simply because "[t]here was testimony of touching the buttocks and genitalia of the alleged victim." "A trial court's refusal to grant a lesser included offense instruction is a question of law, which we review for correctness." *State v. Reece*, 2015 UT 45, ¶ 16, 349 P.3d 712 (citation and internal quotation marks omitted). The State argues that Gibson has not met his burden of persuasion, because he has not shown that the sexual battery instruction was required under the applicable lesser included instruction test.[5] We agree with the State.

---

5. The State alternatively argues that Gibson has not preserved this argument for appeal. The State may have a point—defense counsel merely asked the trial court if his sexual battery instruction had been included, but failed to respond to the State's contention that the instruction was not appropriate and did not raise the issue again. The trial court also did not rule one way or another regarding whether that instruction was appropriate. However, because we resolve this issue on the basis of inadequate briefing without reaching the merits of Gibson's contention, we need not reach the preservation question.

¶21    A defendant is entitled to have a lesser included offense instruction given to the jury only if he is able to show "(1) that the charged offense and the lesser included offense have overlapping statutory elements and (2) that the evidence provides a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." *State v. Powell*, 2007 UT 9, ¶ 24, 154 P.3d 788 (citation and internal quotation marks omitted); *see also State v. Baker*, 671 P.2d 152, 159 (Utah 1983). But Gibson has not even attempted to demonstrate that the elements of the charged offenses—aggravated sexual abuse of a child—overlap with the elements of sexual battery. Instead, he merely states that "[t]here was testimony of touching the buttocks and genitalia of the alleged victim" and asserts, without any comparison of the elements of aggravated sexual abuse of a child and sexual battery, that "[t]his testimony meets the requirements for sexual battery" and that the jury should therefore have been instructed on the lesser included offense. Gibson also has not attempted to show that the jury would have had a rational basis, based on the evidence, to both acquit him of the sexual abuse of a child charges and convict him of the lesser offense of sexual battery. Rather, Gibson merely reiterates in conclusory fashion that the testimony at trial supported the request for the sexual battery instruction and that it should be "the jury's prov[i]nce to decide if [Gibson] is instead guilty of sexual battery rather than the charges that were brought."

¶22    In the absence of sufficient analysis of either the law or the evidence, we cannot say that Gibson was entitled to the requested instruction.[6] *See* Utah R. App. P. 24(a)(9) ("The

---

6. And as the State suggests, we question whether Gibson could persuasively show based on the evidence that a reasonable jury, on the one count of aggravated sexual abuse of a child of which Gibson was convicted, would have acquitted him of the greater crime and instead convicted him of sexual battery. In particular, it seems questionable whether the evidence would have allowed a rational jury to doubt that Gibson acted with the requisite

(continued…)

argument shall contain the contentions and reasons of the appellant with respect to the issues presented . . . with citations to the authorities, statutes, and parts of the record relied on."); *see also State v. Perea*, 2013 UT 68, ¶ 120, 322 P.3d 624 (stating that an issue is inadequately briefed "when it merely contains bald citation[s] to authority [without] development of that authority and reasoned analysis based on that authority" (alterations in original) (citation and internal quotation marks omitted)); *cf. Baker*, 671 P.2d at 158 ("The analysis of whether an offense is included for purposes of deciding whether to grant a defendant's request for a jury instruction must . . . begin with the proof of facts at trial."). Gibson has therefore failed to persuade us that the trial court erred by not giving his requested lesser included sexual battery instruction to the jury.

## CONCLUSION

¶23   We discern no error in the trial court's decisions that Gibson has challenged on appeal and accordingly affirm.

--------

(…continued)

mental state for sexual abuse of a child—that is, "with the intent to arouse or gratify" his sexual desire, Utah Code Ann. § 76-5-404.1(2) (LexisNexis 2012)—and decide instead that he acted with the mens rea for sexual battery—that is, "under circumstances the actor knows or should know will likely cause affront or alarm to the person touched," *id*. § 76-9-702.1(1).